The People on the relation of Bela Hubbard and others v. The Township Board of Springwells.

*Constitutional law : Internal improvements : Highways.* Commissioners, who with their successors are appointed only by the state authority, and authorized to improve a highway in a township and levy the expenses on adjacent lands, and afterwards keep the road in repair by tolls, and make up the deficiency by taxation, are state agents; and the work is unlawful under the constitutional prohibition against the state engaging in works of internal improvement.—*Cons., Art. XIV., § 9.*

*State agents : Town officers.* Such persons cannot become town officers by acquiescence. The town has no share in their appointment, and they interfere with the functions of such town officers as are constitutionally provided for.

*Township highways: Local officers.* Township highways and other local interests cannot be taken from the custody of the proper local officers.

*Heard May 14. Decided May 17.*

Application for *mandamus.*

*D. C. Holbrook* and *G. V. N. Lothrop,* for the respondents.

*C. I. Walker,* for the relators.

CAMPBELL, J.

By act No. 414 of 1871, the governor was empowered to appoint three commissioners to improve Fort street from the western limits of the city of Detroit to the Dearborn road—the entire work being in the township of Springwells. The commissioners were not required to reside in the town, and, in fact, a majority did not. The work to be done included macadamizing and draining the street, with some other necessary finishing, and when done it was to be paid for by issuing bonds of the township, the interest of which was to be met by a general tax on the township, and the principal by an assessment made for that purpose in the outset by the commissioners, upon the lands fronting on the street; which was made a district for the purposes of

the assessment, on which the cost was to be apportioned according to the benefits.

The statute provided that the governor should remove and re-appoint commissioners at his pleasure. The road when finished was to continue under their care and custody, and they were required to keep it in repair. They were authorized to levy tolls upon the same terms allowed to plank road companies, and subject to the same exemptions, including farmers going to and from work, and persons and vehicles going to and from public worship, and to and from funerals. Any further repairs not made up from the tolls were to be paid for by tax on the real and personal property in the assessment district. The commissioners were to receive the per diem of supervisors (except one who as a civil engineer was to receive five dollars per day), all these fees until the road was finished being payable as expenses and included in the bonds, and all services subsequently rendered being paid by similar fees, but being made town charges and payable as other town charges, out of the town treasury.

The improvements having been made, the board of commissioners applied to the township board to issue the bonds, but the latter refused to issue them, claiming the law to be invalid. A *mandamus* being now applied for, this defense is relied on, the street being a common highway of the township, and the respondents insisting on the want of power in the legislature to put it in the hands of the commission, or to provide for its improvement by the means set forth in the act. A replication was filed insisting that by permitting the commission to take possession of the street and improve it, without protest, the township is precluded from objecting to the invalidity of the statute.

The first inquiry which presents itself is as to the position of the commissioners. They are appointed by the

state, derive all their powers from the state, are subject to
no supervision of any one except as to the governor's power
of removal, and, with their successors appointed in the
same way, hold in perpetuity.    They are, then, officers or
agents of the state.

The money to pay the principal debt created by the
work, is payable out of an assessment levied according to
their discretion upon lands in the district.    The sums
payable are fixed by themselves, their bills are certified by
themselves, the tolls are levied and repairs made at their
discretion, and the taxes are all to be levied for such sums
as they fix.    The town authorities have no discretion, but
merely collect what they require, and issue bonds for the
sums they require.

The work in question is one specifically ordered to be
made by a law of the state, and the moneys are to be
raised and expended by state agents, the expense being
charged in part upon a township, and in part upon a
smaller district, but leaving these localities no option of
receiving or rejecting the burden.

By *Article XIV., section 9* of the state constitution, it is
declared: " The state shall not be a party to, or interested
in, any work of internal improvement, nor engaged in carry-
ing on any such work, except in the expenditure of grants
to the state of land or other property."

That a macadamized road is a " work of internal
improvement" is manifest.    The shortness of the road does
not change its character.    The restriction is not against
great works, but against all works of that kind, and the
case comes within the language and intent of the prohibi-
tion.    And we can only repeat what was said in *Ryerson
v. Utley, 16 Mich. R., 269,* that " The constitution does
not permit the state either to contract a debt for a public
improvement, or to expend in its construction any thing

but the grants which it has received for the purpose; and any legislation which attempts any other expenditure, must be directly within the constitutional inhibition, and, therefore, void."—p. 275. The question whether the work is carried on by the state, in no way depends on the sources from which the money is drawn to pay for it. It is a state work if directed, planned, and executed by state agency, and while the fact that the money is charged on a certain locality may make the proceeding objectionable on independent grounds, it does not alter its character.

The ground set up in the replication also renders it necessary to consider the action of the commission in its bearing upon the local authorities, and to examine how far it can be considered as binding on them by acquiescence or adoption.

This street, being a public highway, was by law put under the charge of the local authorities. The constitution (Art. XI., § 1) requires an election every year of a township commissioner of highways, and of an overseer of highways for every highway district. Their powers were subject to legislative modification, but no legislation could abolish the offices, or take away all their functions. The highways in each district must be, to some extent at least, subject to an overseer elected by the people. As we held in the case of the Detroit board of public works (24 Mich., 44), the regulation of the township affairs, legally concerning none but the people of the town, cannot be lawfully vested in any officers imposed upon the township from without. These commissioners, not appointed by, or responsible to, the township or its people, are empowered to assume exclusive charge of a town highway, turn it into a toll-road, and raise money, and impose taxes in the township, to complete and repair the work. From first to last the town and all its elected officers are powerless, and subject to the

control of this foreign body; and the people have no voice in the management of one of their own public ways, which is converted into a perpetual turnpike, and put on the same footing with private turnpikes, except that its trustees are appointed by the state, and paid by a tax imposed upon the town. The overseer of this highway district is excluded from all his functions, and so are all others who should have any voice in the matter. The result is that a purely local work, public in its character, is taken charge of and conducted at local expense, and paid for by local bonds and taxes, without giving any of the local authorities any function to perform, except that of yielding implicit obedience to the orders and requisitions of a commission, in whose appointment and government the town and its people have had no part whatever.

This is a very clear usurpation, and, so far as it goes, an absolute destruction of the local privileges. There is no principle which can justify such an interference, which would not equally justify the assumption by the state, of immediate control by its agencies of every highway in the commonwealth, and the imposition of local taxes for local purposes to be levied and expended by persons neither residing in, nor in any way connected with, or responsible to, the towns on which they levy their charges.

We do not think there is any analogy between this case and those where officers not originally entitled to assert title become confirmed by acquiescence. If there is a lawful office and lawful means for filling it, there can always be an incumbent *de facto*, when there can be one *de jure*. And where an office is to be filled by a local appointment in the future, and those who have control of the future nominations accept and recognize the first ones made by the legislature, we held, in the case of *People v. Lothrop,* *24 Mich.*, *335*, that such practical approval and consent

might make that a valid appointment which would not have been valid without acquiescence or recognition.

In the present case these commissioners and their successors are in no case to be appointed or approved by any town authority. The town officers can have no functions outside of their constitutional or statutory powers; and as they could under no circumstances delegate their trusts to these commissioners, or appoint these men to any such office, or abdicate their own authority, they can give no such rights by acquiescence as they could not give in any other way. The constitution will not permit a township to give up its vitality. These acts of the commission, and the authority under which they are justified, are completely foreign to any jurisdiction derived from the township. They rest on a claim of sovereign authority above and independent of the township, and in hostility to its legal rights. The people themselves could not surrender these, and none of their agents can impair them. The commission cannot exist without destroying the necessary constitutional powers of the township.

We think that the action of the commission can derive no validity, either from the act of the legislature, or from the inaction of the township. There is, therefore, no authority in the board to intermeddle with the road, or to demand the bonds to pay for its working.

The *mandamus* must be refused, with costs of the motion.

The other Justices concurred.