## ELIZA B. WILCOX v. JAMES PADDOCK, JUDGE OF PROBATE OF GRATIOT COUNTY.

*Constitutional law—Title of act—Taxation—Internal improvement.*

1. An application for the appointment of a special commissioner, under the provisions of Act No. 94, Laws of 1885, signed prior to the approval of the act, as shown on the face of the application, *held* void.

2. Act No. 94, Laws of 1885, is unconstitutional, because—

   *a*—The *title* in no way indicates that the proposed improvement affects Clinton county, or that lands in that county will be taxed by reason thereof, both of which *purposes* are covered by the body of the act.

   *b*—The Legislature has no power to authorize the judge of probate of Gratiot county to appoint a commissioner to superintend the improvement of a river, and determine the necessity for such work, and assess taxes for benefits upon lands, without the limits of his county, such action being an encroachment upon the right of local self-government.

   *c*—The act violates the provision of article 14, § 9, of the Constitution, forbidding the State from being a party to or interested in any work of internal improvement, or engaging in the carrying on of such work, except in the expenditure of grants to the State of land or other property.

Certiorari to the judge of probate of Gratiot county. (Paddock, J.) Argued January 11, 1887. Decided February 10, 1887.

Petition to quash proceedings for the appointment of a special commissioner under Act No. 94, Laws of 1885. Proceedings quashed. The facts are stated in the opinion.

*Auten & Moss (H. & H. E. Walbridge,* of counsel), for petitioner.

*S. J. Scott* and *T. W. Whitney*, for respondent.

MORSE, J. The petitioner is a resident and freeholder in the township of Essex, Clinton county. She owns 80 acres of land, the most of which is wild and uncultivated, situated along the Maple river. It is valued at $1,200, and incumbered for $1,000.

By proceedings taken in the probate court of Gratiot county, under Act 94 of the Session Laws of 1885 to improve the Maple river, a tax has been assessed against her said land in the sum of $102.24. She brings said proceedings by writ of *certiorari* to this Court for review.

The act in question was approved May 13, 1885. It was entitled—

"An act making an appropriation of State swamp lands to aid the county of Gratiot in improving the channel of Maple river, and to authorize a tax to complete the same, and to repeal act number fifty of the Session Laws of 1881, entitled 'An act to authorize the Board of Control of State Swamp Lands to make an appropriation of swamp lands to remove bars and obstructions in Maple river in the counties of Clinton and Gratiot,' approved March 26, 1881."

It appropriated 10 sections of swamp lands to aid in improving the channel of the Maple river in the counties of Clinton and Gratiot. The swamp lands were appropriated to the county of Gratiot.

Upon application in writing, signed by three or more freeholders of each of the counties of Clinton and Gratiot, and residing in either of the townships of Fulton, Washington, and Elba, in Gratiot county, and Essex, in the county of Clinton, presented to the probate court of Gratiot, a hearing was to be had by such court, upon notice, specified in the act, to all persons interested in such petition, and a special commissioner appointed to superintend the work provided by the act, in case—

"It shall appear that said work is necessary, and for the good of the public health, or highways, and a means of reclaiming swamps and overflowed lands in said townships."

The notice required by the act was to be served by posting copies of the order of hearing in three of the most public places in each of said townships at least 10 days before the hearing of the petition.

The commissioner so appointed was, after qualification and giving bond, empowered to examine, as soon as practicable, personally the line of the proposed work; and—

" If, in his opinion, it is necessary, and for the good of the public health, that the channel of the Maple river, in the townships of Fulton, Washington, and Elba, in Gratiot county, and the township of Essex, in Clinton county, should be opened, deepened, widened, or straightened, and otherwise improved, he shall * * * cause a survey and measurement of the line, * * * and shall establish the commencement and terminus, and determine the route, width, length, and depth thereof, and for that purpose may enter upon any lands traversed by the proposed route of said work."

Upon the completion of the survey, plans, etc., the commissioner is authorized to take steps to procure title to the county of Gratiot of the lands, or right of way necessary therefor, and is vested with all the powers conferred upon county or special drain commissioners, and may proceed to acquire title, without petition or other preliminary proceedings, in the manner provided for acquiring title for county drains, or he may proceed under any other law of this State provided for condemning right of way. He may proceed the same as special drain commissioners are authorized to, in cases where lands affected by the construction of drains are lying in more than one county, the same as if he were appointed as a special commissioner by the probate court of Gratiot county, in pursuance of Act No. 269 of the Session Laws of 1881, and the probate court for said county is given the same jurisdiction of all the proceedings in the prosecution of the improvement as it would have had had said commissioner been appointed by said court under said Act 269.

An order for the amount of damages awarded, drawn upon the treasurer of the proper township, and tendered to the person entitled to such damages, or deposited with the township clerk, shall be deemed a sufficient security for the same.

The cost of the improvement, and expenses incident thereto in excess of the swamp-land appropriation, are authorized to be assessed upon the lands benefited thereby. The commissioner makes the assessment roll, which, after completion, is to be submitted to a board of review, who may alter and amend the same, and whose decision shall be final.

The board of review is to be composed of the supervisors of the four townships named in the act, and the commissioner, who is chairman, and authorized to vote only in case of a tie.

The taxes thus assessed are collected by the township treasurers of the respective townships wherein the lands assessed are located, but, when collected, are held subject to the order of the commissioner for the payment of the contract, damages, and other expenses pertaining to said improvement.

There are other provisions in the act; but I have noticed all I have deemed material in the settlement of this controversy.

On the eighteenth of May, 1885, an application was filed in the probate court of Gratiot county praying for the appointment of a special commissioner on the improvement of Maple river " according to the provisions of House Bill No. 689, File No. 141.'' The body of the application stated that the signers were " freeholders residing in the townships of Fulton, Washington, and Elba, in Gratiot county, and the township of Essex, in Clinton county.'' It was dated at Lansing, February 25, 1885, some 80 days before the approval of the bill by the Governor, and was signed by nine persons purporting to be residents of Gratiot, and seven of Clinton county. It did not appear on the face of the petition, or anywhere in the proceedings, what township any of them resided in.

Upon this application, the same day of its filing, the judge of probate of Gratiot county made an order appointing a hearing June 8, 1885, and requiring all persons interested to appear on that day, and show cause why such commissioner should not be appointed, and to be heard in reference to such appointment. Notice was ordered to be given by causing a copy of the order to be posted up in three of the most public places in the townships named in the act at least 10 days before the hearing. The hearing was, on the eighth day of June, adjourned until the twenty-third day of the same month. Upon that day a hearing was had, and the judge determined that the work was "necessary, and for the good of the public health, and a means of reclaiming swamp and overflowed lands in said townships," and appointed William H. Kroll, of St. Louis, Gratiot county, a special commissioner, "under and by virtue of said act, to superintend the construction of the work therein provided for, and for the performance of such other duties as may devolve upon him by virtue of said act."

The application upon which this order and appointment was made shows upon its face that it was signed before there was any law authorizing any such application, or any action thereon. Instead of referring to the act as provided by the statute, it referred to the bill as it was before it became a law. There seems to have been great haste to set the machinery of the probate court in motion, and the motive power is apparently directed from a place outside of the counties interested in the act. The haste, however, has nullified the proceedings, as the application is void upon its face, in that it does not comply with the act, and appears to have been executed before there was any statute under which to make an application, or to act in the premises It conferred no jurisdiction upon the probate court to appoint a commissioner, even if the act itself can be sustained as a valid law.

We are inclined to think that there are other fatal defects

in the application and in the other proceedings, but we shall not take time to examine them.

As the commissioner has examined the line of the improvement proposed, and made plans and estimates, and let a contract for the same at a proposed cost of between sixteen and eighteen thousand dollars over and above the swamp land donated by the act, and work has been commenced under said contract, it is desired by both parties to this litigation that we should pass upon the constitutionality of the act.

We consider it clearly unconstitutional, for at least three reasons.

*First.* There is nothing in the title of the act in any way indicating that the improvement affects Clinton county, or that any lands in that county will be assessed for taxation by reason thereof.

No person examining the title of the bill while it was pending before the Legislature would have suspected that it had any reference to the improvement of Maple river within the county of Clinton. Indeed, the repeal of the act passed in 1881, expressed in the title, would naturally lead any person to believe that the work was not proposed to be extended beyond the limits of Gratiot county, as the act repealed by its title applied to Clinton as well as Gratiot, while the present law refers in its title to Gratiot alone. The purpose found in the body of the act, to improve the river in Clinton county, and to assess lands benefited by such improvement therein, is not expressed in the title. It is therefore in conflict with section 20, art. 4, of the Constitution.

*Second.* The Legislature has no power to confer upon the judge of probate of Gratiot county authority to appoint a commissioner to superintend the work of improving the Maple river, and determine the necessity for such work, and assess taxation for benefits upon lands, without the limits of the county of Gratiot and in Clinton county. It is an encroachment upon the right of local self-government. The taxes are

assessed by the commissioner, and, although paid to the township treasurer, are held subject to the orders and disbursements of the commissioner. The act undertakes to wipe out county lines, and confer sovereign authority upon an officer selected by a probate court in another county. The local authorities of Clinton county, or of the township of Essex, have no voice or power in the matter. The whole theory of the Constitution, and of our State polity, before and since its adoption, looks to the imposition of local taxes for local purposes by local officers.

By this act they are to be levied and expended by a person not a resident of the township or the county of which the persons assessed are inhabitants, and in which the work is done from which the benefits auth'orizing the taxes are presumed to arise.

The authority of the commissioner, who is made the taxing officer, is derived from a court whose jurisdiction is foreign to and independent of the county of Clinton; and the board of review which makes such assessment a finality is composed of four members out of five as completely beyond the reach of the people taxed as if they lived in another State. The people of Essex, in Clinton county, therefore, by this act, are taxed by officers in whose election they have no voice, and whom they have no power to replace by others of their own choosing. This cannot be done. *Hubbard v. Township Board of Springwells*, 25 Mich. 153; *Attorney General v. Detroit Common Council*, 58 Id. 213, 216, 226.

*Third.* The act violates the provision of the Constitution, article 14, § 9, that—

"The State shall not be a party to or interested in any work of internal improvement, nor engaged in carrying on any such work, except in the expenditure of grants to the State of land or other property."

The act authorizes the payment of costs and expenses of this improvement over and above the grant of swamp lands;

and the power of taxation has been exercised, and levies made under it, to raise some sixteen or seventeen thousand dollars. It comes clearly within the previous rulings of this Court upon similar acts. *Ryerson v. Utley,* 16 Mich. 274; *Anderson v. Hill,* 54 Id. 477; *Sparrow v. Commissioner of State Land Office,* 56 Id. 574, 577, 578.

It is strenuously insisted by the counsel for respondent that this act is not a work of internal improvement, but an exercise of the police power of the State to protect the health of the public, and abate a public nuisance arising from the overflow of many acres of lowlands by the Maple river, in the townships specified in the act, which overflow is the source and cause of many dangerous diseases in such townships.

Without discussing the power of the State, under its police authority, to enter upon a work of this kind, it is a sufficient answer to this argument that the title of the act expresses no such object, but mentions only the improvement of the channel of the Maple river as its purpose. And the body of the act looks more to the "reclaiming of the submerged lands," and the opening, deepening, and widening of the river, than to any other object. True, it speaks of "improving the sanitary condition of the adjacent lands," but this is merely an incidental allusion. The court appointing the commissioner need only find, in order to do so, that the "work is necessary, and for the good of the public health, or highways, and a means of reclaiming swamp and overflowed lands." It will be seen that the language and punctuation of this clause would authorize the appointment of such commissioner if it appeared the work was necessary and for the good of the highways, and a means of reclaiming swamp and overflowed lands. The good of the public health need not be necessarily considered. Section 3.

The commissioner himself, however, must examine the line, and determine that the work is necessary, and for the good

of the public health that the channel of the river should be opened. Section 6.

The lands are not assessed for taxation because of benefits to the public health, but the taxes are assessed upon and paid "by the lands, easements, and property benefited thereby [referring to the construction of the improvement], and by any township, city, or village, by reason of the benefit to the public health, and as a means of improving any public highway."

The petitioner, for instance, under this act, is taxed upon her lands for the benefit of the improvement to them; and for the benefit to the public health and the highways she pays also her proportion of the township tax. Her lands are assessed for a work of internal improvement as well as for the benefit of the public health.

The manifest purpose of the act is apparent. It is a scheme to improve the lowlands of the Maple river, and to straighten and deepen the channel of the river. It is a work of internal improvement in its title, in its apparent object, and its real intent; and the taxing power of the State is being used, in defiance of the Constitution, to aid in its construction and completion.

The proceedings are without authority of law, unconstitutional, and void, and must be quashed.

The other Justices concurred.