## PARKS v. BOARD OF COM'RS OF WYANDOTTE COUNTY.

### FIRST NAT. BANK OF LANSDALE v. SAME.

(Circuit Court, D. Kansas, First Division. May 16, 1894.)

### Nos. 6,766, 6,864.

**1. CONSTITUTIONAL LAW—DELEGATION OF TAXING POWER—ROADS.**

Acts Kan. 1887, c. 214, which provides that, if the resident landowners within half a mile on either side of a road shall petition the county commissioners to improve the road, the latter shall appoint three road commissioners to take charge of the improvement and assess two-thirds of the expense against the lands in the district, the balance to be paid out of the general county fund, is an unconstitutional delegation of the taxing power, since Const. Kan. art. 2, § 21, which declares that "the legislature may confer upon tribunals transacting the county business of the several counties such powers of local legislation and administration as it shall deem expedient," necessarily precludes any implication of authority to

delegate to road commissioners or to resident landowners near a road the power of taxing all the property in the county. Board v. Abbott (Kan.) 34 Pac. 416, followed.

**2. SAME—COUNTY WARRANTS.**
    Certificates of indebtedness issued by a county by virtue of an unconstitutional law are void.

In Equity.    On demurrer.

Suits by Clarence A. Parks and the First National Bank of Lansdale, Pa., respectively, against the board of commissioners of Wyandotte county, Kan.

Buchan, Freeman & Porter, for plaintiffs.

McGrew & Watson, for defendant.

WILLIAMS, District Judge.    The bills in these causes seek to recover against the county of Wyandotte upon instruments in writing executed by road commissioners appointed by the county commissioners under an act of the legislature of the state of Kansas entitled "An act for the improvement of county roads" (Acts 1887, c. 214).    The county commissioners filed answers to the bills, setting up the unconstitutionality of the act, and denying that the persons who signed the instruments had any authority in law to execute them.    The complainants demurred to the answers.    The act provides that whenever a majority of the resident landowners within one-half mile on either side of any regularly laid-out road within the terminal points mentioned in the petition shall petition to the board of county commissioners of any county for the improvement of a road it shall be the duty of the county commissioners to appoint three road commissioners, resident landowners of the county, to take charge of the improvement.    In payment for work done or materials furnished the act authorized these road commissioners to issue certificates bearing interest at the rate of 7 per cent.    One-third of the expense of the improvement was to be paid out of the general county fund, and two-thirds to be assessed by these road commissioners against the lands in the district, according to the benefits.    By the terms of the act, a few landowners along any road might set in motion the machinery of taxation, and tax the whole county; and at the same time the act delegated to these road commissioners the power to assess the lands of the district.    Local assessments are an exercise of the taxing power. Cooley, Tax'n, 623, 624.    The rule that legislative authority cannot be delegated applies to local assessments, the same as to other taxes. Id. 655

Does the constitution of the state of Kansas authorize the legislature to delegate the power of taxation either to the signers of these petitions or to these road commissioners?    Can a tax be arbitrarily forced upon the taxpayers of a county, either by individuals or by officials in whose appointment they have no voice?    The power of taxation is a power inherent in all governments.    In a constitutional government, the people, by the constitution, confer it on the legislature.    It is one of the highest attributes of sovereignty. It includes the power to destroy.    It appropriates the property and

labor of the people taxed. Unrestrained power of taxation neces-
sarily leads to tyranny and despotism. Hence, in all free govern-
ments, the power to tax must be limited to the necessities for the
purposes of government, and the agencies for local taxation
should be fixed and their powers limited by organic law, and they
should be so selected as to be directly answerable for their official
acts to their local constituencies or districts to be taxed. If they act
corruptly, those directly interested may then remove them, and
appoint others. If those directly interested have no voice in their
appointment, or power to remove them, they have no means of
correcting their abuses. No other rule can secure those to be
taxed from oppression and fraud on the part of the taxing officers.
In McCulloch v. Maryland, 4 Wheat. 428; Marshall, C. J., said:

> "The only security against the abuse of this power [the taxing power] is
> found in the structure of our government itself. In imposing a tax the leg-
> islature acts upon its constituents. This is, in general, a sufficient security
> against erroneous and oppressive taxation."

This reasoning applies with equal force to all kinds of taxation,
and has been applied as well to local assessments or improvement
districts as to taxes levied in local, political, and municipal cor-
porations. Wilcox v. Paddock, 65 Mich. 23, 31 N. W. 609; Har-
ward v. Drain Co., 51 Ill. 130; People v. Hurlbut, 24 Mich. 88–
108; People v. Township of Springwells, 25 Mich. 153; Board of
Park Com'rs v. Common Council of Detroit, 28 Mich. 228; Schultes
v. Eberly, 82 Ala. 242, 2 South. 345; Pope v. Phifer, 3 Heisk. 698,
699. Self-taxation, or taxation by officers chosen by or answerable
to those directly interested in the district to be taxed, is inseparable
from that protection of the right of property that is either ex-
pressly or impliedly guarantied by all written constitutions, under
our system of government. Of all the powers of government the
one most liable to abuse is the power of taxation. If placed in
hands irresponsible to the people of the district to be taxed, its
abuse is a mere question of time. If taxes may be forced on the
people of a whole county, arbitrarily, by a few people signing a
petition, it is plain that the people of the county, being the district
to be taxed, have no voice in or control over the tax. There is no
limit to the cost of these improvements, and the taxpayer is abso-
lutely without means to check or control abuses that naturally
follow arbitrary and irresponsible power over the property of others.
The act is a plain violation of the principle of self-taxation, and a
clear invasion of the right of property. The people, by the consti-
tution, did not authorize the legislature to so jeopardize the right
of property. The legislature is not the fountain—not the source—
of power. Under our system of government the legislature can
exercise only such powers as the people have delegated to that body,
either expressly or by necessary implication, by the constitution.
All rights not so delegated are retained by the people. The right
to life, liberty, and property is among the inherent and inalien-
able rights that the people did not commit to the legislature. Con-
stitutions are adopted and governments administered for the pro-

tection, and not for the destruction, of these reserved rights of the people. People v. Morris, 13 Wend. 328; 1 Blackw. Tax Titles, §§ 15, 16. Illegal or oppressive taxation is destructive of the right of property, and is not government, under the constitution; but is misgovernment. "We suppose it will be conceded by every one that the legislature have no inherent power of any kind; that they possess no power except such as is delegated to them by the people; and that, unless the constitution of the state authorizes them to enact such a law as the one now under consideration, they had no authority to do so." Leavenworth Co. v. Miller, 7 Kan. 489. The conferring on the legislature of the sovereign power to tax is for the purposes of government. In pursuance of the purposes of government, the legislature may delegate the power to counties, cities, towns, and villages. Cooley, Tax'n, 63. If not expressed in the constitution, this power to delegate exists by necessary implication, for the reason that counties, cities, towns, and villages are parts of the machinery of state, and the delegation of the taxing power to them is necessary in the administration of the state government. In some states the power of the legislature to delegate the taxing power is not left to be supplied by necessary implication, but the people, by the constitution, expressly authorize the delegation of the taxing power to certain agencies named in the instrument. The constitution of Kansas fixes the agencies for local taxation, and the limit of their powers is well defined by the two following provisions:

"Sec. 21, art. 2. The legislature may confer upon tribunals transacting the county business of the several counties such powers of local legislation and administration as it shall deem expedient."

"Sec. 5, art. 12. Provision shall be made by general laws for organization of cities, towns and villages and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power."

The express authority here granted precludes any implication of the authority to delegate the power of taxation to any other agencies than those named. Keesee v. Board of Ed., 6 Cold. 127; Harward v. Drain Co., 51 Ill. 130; Updike v. Wright, 81 Ill. 49. There is nothing in either of the sections to authorize the delegation of the power to tax, or the power to make these special assessments, to the signers of these petitions for the improvement, nor to the road commissioners. Neither of these bodies is the tribunal that transacts the county business, nor is the improvement within any organized city, town, or village. The constitution not having authorized the legislature to so delegate the taxing power, no such authority existed. Schultes v. Eberly, 82 Ala. 242, 2 South. 345; Cooley, Tax'n, 61; 1 Desty, Tax'n, 419; 1 Blackw. Tax Titles, 118. The road commissioners, by the terms of the act, need have no interest in the improvement, nor does the power that appoints them have any interest in the district to be assessed. The road commissioners are in no way answerable for their acts to the owners of the lands of the district, nor have the taxpayers of the county any discretion, voice, or control over the affairs of the district, although they

pay one-third of the cost. It is an arbitrary proceeding. The majority of any small district may force the tax upon the whole county.

Since the filing of these bills the supreme court of Kansas has held this act unconstitutional in the case of Board v. Abbott, 34 Pac. 419. The court in this case said:

"The act gives a majority of the resident landowners of a special and small taxing district, established at their instance, the power to subject the land and personal property within the district to two-thirds of the cost of improving any county road in the district, according to the benefit to the land and personal property within such taxing district; and, in addition, gives such resident landholder in such special and small district the power to compel all the taxpayers of the county to pay one-third of such special taxes and assessments, without having any voice, either through their own votes or through the action of any county tribunal or other elected officers. * * * Only a part interested have any authority. They can, under this statute, impose taxes or special assessments on other taxing districts and on the whole county, without any right of such other taxing districts to vote, or the county as a whole to have any voice in the proceedings."

I fully concur with the conclusion of the supreme court of Kansas.

The act being unconstitutional, what is the standing of the instruments sued on? "An unconstitutional act is not a law. It confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby Co., 118 U. S. 441, 6 Sup. Ct. 1121. The road commissioners were authorized, by section 6 of the act, to issue certificates for work done or materials furnished. The instruments sued on certify that the county of Wyandotte is indebted to and promises to pay the bearer the sum named in each certificate. These certificates all refer to the act, and recite what they were given for, and are signed by the road commissioners. The act being unconstitutional, it created no authority in the road commissioners. They in no way represented the county, and their signatures could no more bind the county than the signatures of any other citizens of the county. The face of the certificates contained the evidence of their invalidity, and were notice to every person receiving them that they were invalid. As there was no law authorizing the county to enter into such contracts, and the instruments sued on not having been executed by any authority that represented the county, they could not be ratified. Marsh v. Fulton Co., 10 Wall. 677; Risley v. Village of Howell, 57 Fed. 544. These certificates cannot be a charge against the county. The demurrers to the answers are overruled.