STATE OF IOWA, on Relation of JAMES A. HOWE, as County Attorney of Polk County, Iowa, Appellant, v. THE MAYOR AND THE CITY COUNCIL OF THE CITY OF DES MOINES.

**Constitutional Law:** DELEGATION OF TAXING POWER: *Municipal corporations.* So much of Iowa Acts Twenty-sixth General Assembly, Chapter 50, as attempt to confer upon the board of library trustees, appointed by the mayor with the consent of the city council, the power to fix absolutely and beyond the control of the council the amount of taxes to be raised for the purposes of the library, is unconstitutional, under the rule that the legislature cannot, without the consent of the people, delegate the power of taxation for municipal purposes to a body of persons not elected by and immediately responsible to the people.

SAME. The legislature may for proper and legitimate purposes confer the taxing power upon municipalities, but such power cannot be delegated, without the consent of the people of the municipality, to any body or person not elected by, and immediately responsible to the people. Citing *People v. Chicago,* 51 Ill. 17; *Howard v. Drainage Co.,* 51 Ill. 130; *Board of Commissioners v. Abbott,* 34 Pac. Rep. 416; *McCulloch v. Maryland,* 4 Wheat. 428, and concurring opinion in *Board of Park Commissioners v. Detroit City Council,* 28 Mich. 227.

ACCEPTANCE OF LAW. The acceptance by the people of a city of the provisions of the Iowa statutes authorizing the establisment of public libraries by cities, before the adoption of Acts Twenty-sixth General Assembly, which in effect, transfers the power of taxation for library purposes from the city council to the board of library trustees, appointed by the mayor with the approval of the council, does not operate as an assent by them to the exercise of the taxing power by such trustees, so as to remove the constitutional objection to such delegation of the taxing power by the legislature.

*Appeal from Polk District Court.*—HON. W. F. CONRAD,
Judge.

SATURDAY, OCTOBER 9, 1897.

ACTION for mandamus to compel the city council of
the city of Des Moines to levy a tax for the purpose of
creating a sinking fund to build a library building in
said city, and to compel said city council to levy a tax
for the maintenance of a library. Jury waived, trial
to the court, and judgment for defendants for costs.
Plaintiff appeals.—*Affirmed.*

*Read & Read* and *Hubbard & Dawley* for appellant.

*J. K. Macomber* and *Bishop, Bowen & Fleming* for
appellee.

KINNE, C. J.—I. The conceded facts in this case
are as follows: The city of Des Moines, a city of the
first class, in 1882, by a vote of its electors, accepted the
provisions of the statute of this state relating to the
establishment and maintenance of free public libraries,
and had, in the exercise of the powers conferred upon
it, established and was maintaining such a library. In
pursuance of law, a board of library trustees had been
appointed and was exercising the powers and duties
imposed upon it. On July 31, 1896, said board of
trustees did fix and determine a rate of taxation of one
mill on the dollar of the taxable valuation of the prop-
erty in said city for the purpose of maintaining the
public library and at the same time did fix and deter-
mine a rate of taxation of three mills on the dollar for
the purpose of creating a sinking fund for the purchase
of a lot and the erection of a library building, and did
cause said amounts so fixed and determined to be certi-
fied to the city council of said city. Said city council

refused to levy and certify to the county auditor said amounts so certified to them by said board of library trustees, but did levy and certify one-half a mill tax for the purpose of the maintenance of the library. Thereupon this action was brought to obtain a writ of mandamus compelling the city council to levy and certify the rates of taxes fixed and determined by the board of library trustees. As is said by counsel for appellants. "The ultimate question to be determined is whether or not the city council in cities of the first class accepting the provisions of the statute relating to the establishment and maintenance of free public libraries, and maintaining such library, is bound and required to levy and certify the amount of taxes or the rate of taxation fixed and determined by the board of library trustees of said city."

II.    On the one hand it is contended that the statute vests in the board of library trustees absolute power to fix and determine the amount of the levy to be made for the purpose of maintenance of the library, and of creating a sinking fund for the purchase of a lot and the erection of a library building, subject only to the limitations in the statute; and that the duty devolves upon the city council to levy and certify the sums so certified to them by said board; that the city council is without any discretion in the matter. On the contrary, the appellees contend that the board of library trustees has no such power; that its power in the matter is advisory merely, and that the city council is invested with a discretion as to the amount or amounts which shall be levied for the purposes mentioned. As in the discussion which may follow reference may be made to various acts of the legislature touching the creation and maintenance of free public libraries, it may tend to brevity to here recite the substance of all such statutes which can have any bearing upon the

question under consideration. Chapter 45, Acts
Thirteenth General Assembly, provided that cities of
the first and second classes might levy an annual tax
not exceeding one-half mill on the dollar of the taxable
property in such city for the maintenance of a free pub-
lic library and reading room, provided a suitable lot
and building be first donated for such purposes. The
city council was authorized to appoint officers for such
library and reading room. The Fourteenth General
Assembly, in chapter 47, extended the provision of the
former act so as to include incorporated towns,
increased the amount of the levy, and authorized all
the municipalities referred to in the act, out of the
money raised, to purchase land and erect buildings or
lease rooms. The act also provided that before exer-
cising any of the powers conferred, it should be
accepted by a vote of the people. The same provisions,
in substance, were incorporated in the Code of 1873
(section 461), in which it was declared that "the estab-
lishment and maintenance of a free public library is
hereby declared to be a proper and legitimate object
of municipal expenditure." Such was the law in force
at the time the electors of the city of Des Moines voted
to accept its provisions, and to establish a free public
library. By chapter 41, Acts Twenty-Fifth General
Assembly, it was provided that in any city which had
accepted the provisions of Code, section 461, there
should be created a board of library trustees, to be
appointed by the mayor, with the approval of the
council. That act vested in said board full power
of control over the library, including the power to
appoint and remove librarians and employes; that they
should have full power over the moneys raised for the
library by taxation; and said act also contained the
following, viz.: "The board of library trustees shall,
before the first day of August in each year, determine

and fix the amount or rate to be appropriated for one year under section 461 of the Code of Iowa for the maintenance of such library, and cause the same so fixed to be certified to the council, and the council shall make such appropriation and levy the necessary tax for such year to raise said sum and certify the percentage or rate not exceeding one mill on the dollar of such tax to the county auditor, * * * provided that in cities of the first class the city council may and shall levy and certify such further sum of tax as it may deem expedient to create a sinking fund and pay interest under the provisions of chapter 18, Acts of the Twenty-second General Assembly, and acts amendatory thereof." By chapter 99 of the acts of the same general assembly power was conferred upon the city to levy and collect a tax of not exceeding three mills on the dollar to pay interest on any indebtedness theretofore contracted or to be thereafter contracted or incurred for the purchase of real estate and the erection of a building or buildings for a public library, and to create a sinking fund for the payment of such indebtedness. By chapter 5, Acts Twenty-sixth General Assembly, the tax was authorized to be collected annually. By chapter 50, Acts Twenty-sixth General Assembly, it was provided that the board of library trustees should determine and fix the rate, not exceeding one mill on the dollar, for the maintenance of the library, and not exceeding three mills on the dollar for the purpose of paying for a building and the creation of a sinking fund, and "cause each of the amounts or rates so determined and fixed to be certified to the council, and the council shall levy the taxes necessary to raise said sums respectively for such year, and certify the percentage or rates * * * of such tax to the county auditor." In pursuance of the provisions of chapter 41, Acts Twenty-fifth General Assembly, a

board of library trustees had been appointed. In March, 1892, the city of Des Moines, as it then existed, by a vote of the electors, accepted the benefit of the law relating to public libraries. Prior to the passage of the Acts of the Twenty-sixth General Assembly, the city council was clearly invested with discretionary power as to levying a tax for a library building and for the creation of a sinking fund. The act of the Twenty-sixth General Assembly, in terms, seems to require the council to levy and certify the tax certified to it for maintenance and for a building or sinking fund, so long as the same does not exceed the amount provided by the statute.

III. The questions involved in this appeal are of great interest and importance. Irrespective of our duty to uphold the act of the legislature as constitutional, if it be possible to do so without doing violence to well-known legal principles and accepted canons of construction, our interest in the welfare of the people, which is so largely promoted by the establishment and maintenance of public libraries, would prompt us to give the questions presented most careful consideration. If it be conceded that a tax for the maintenance of a public library and for the erection of a library building is a tax for a public purpose, and hence one which, in furtherance of the general public policy of the state, may be compelled to be levied, may the legislature authorize its levy by the board of libary trustees? Touching the power of the legislature to delegate the taxing power, Judge Cooley says: "It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades our whole political system, and, when properly understood, permits of no

exception, and it is applicable with peculiar force to the case of taxation. *The power to tax is a legislative power.* The people have created a legislative department for the exercise of the legislative power and within that power lies the authority to prescribe the rules of taxation, and to regulate the manner in which those rules shall be given effect. * * * There is, nevertheless, one clearly defined exception to the rule that the legislature shall not delegate any portion of its authority. The exception, however, is strictly in harmony with the general features of our political system, and it rests upon an implication of popular assent, which is conclusive. These exceptions relate to the case of municipal corporations. Immemorial custom, which tacitly or expressly has been incorporated in the several state constitutions, has made these organizations a necessary part of the general machinery of state government, and they are allowed large authority in matters of local government, and to a considerable extent are permitted to make the local laws. This indulgence has been carried into matters of taxation; the state in very many cases doing little beyond prescribing rules of limitation within which, for local purposes, the local authorities may levy taxes. * * * The legislature, however, in thus making delegation of the power to tax, must make it to the corporation itself, and provide for its exercise by the proper legislative authority of the corporation. * * * What is true of the state is equally true of the municipality,—that the power they possess to tax must be exercised by the corporation itself, and cannot be delegated to its officers or other agencies." Cooley, Taxation (2d ed.) pp. 61, 63, 65. The doctrine laid down by the learned author is that the delegation of the power to tax by the legislature must be made to the municipality itself, and that it cannot be delegated to other agencies.

The constitution of the state of Illinois contains the following provision:   "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes."   Constitution Illinois, 1848, article 9, section 5.   In construing this provision, the supreme court of that state said that the phrase "corporate authorities," as used in the constitution, must be understood as "those municipal officers who are either directly elected by the people to be taxed, or appointed in some mode to which they have given their assent."   *People v. Mayor, Etc., of City of Chicago,* 51 Ill. 17.   The same court, in construing the same constitutional provision, said:   "The power of taxation is, of all powers of government, the one most liable to abuse, even when exercised by the direct representatives of the people; and, if committed to people who may exercise it over others without reference to their consent, the certainty of its abuse would simply be a question of time.   No person or class of persons can be safely intrusted with irresponsible power over the property of others, and such a power is essentially despotic in its nature, and violative of all just principles of government.   It matters not that, as in the present instance, it is to be professedly exercised for public uses by expending for the public benefit the tax collected.   If it be a tax, as in the present instance, to which the persons who are to pay it have never given their consent, and imposed by persons acting under no responsibility of official position, and clothed with no authority of any kind, *by those whom they propose to tax,* it is, to the extent of such tax, misgovernment of the same character which our forefathers thought just cause of revolution.   We are of opinion that we do no violence to the language of the clause in the constitution we have been considering by holding that

it was designed to prevent such ill-advised legislation
as the delegation of the taxing power to any person or
persons other than the corporate authorities of the
municipality or district to be taxed. These authorities
are elected by the people to be taxed, or appointed in
some mode to which the people have given their assent,
and to them alone can this power be safely delegated."
*Harward v. Drainage Co.*, 51 Ill. 130. In still another
case, in which the constitutionality of the metropolitan
police act of the city of East St. Louis was under con-
sideration, and in which the police commissioners were
appointed by the act, and given power, not to levy a
tax, but to estimate what sum of money would be neces-
sary for each fiscal year to enable them to discharge
the duties imposed upon them, and the act required the
city council to appropriate and set apart the amount
so certified out of the general fund of the city, and, in
case the council failed so to do, then it was made the
duty of the board of commissioners to issue certificates
of indebtedness in the name of the city for the amounts
so certified, the court said: "These police commission-
ers are not the corporate authorities of East St. Louis,
and therefore can have no power of taxation. They are
not elected by the people of that city nor appointed in
any mode to which the people have given their assent.
The act creating them has never been accepted by the
people or by the city council, but, on the other hand,
as alleged in the bill, the council has constantly denied
the authority of the commissioners." *Hinze v. People,*
92 Ill. 406. See, also, *Updike v. Wright,* 81 Ill. 49;
*People v. Morgan,* 90 Ill. 558.

The legislature of the state of Kansas passed an act
authorizing the creation of a board of road commission-
ers, and empowering them, among other things to levy
taxes. The act was held unconstitutional. *Board of
Commissioners v. Abbott,* 52 Kan. Sup 148 (34 Pac. Rep.
416). The question of the constitutionality of the same

act came before the federal court, and the court said: "Does the constitution of the state of Kansas authorize the legislature to delegate the power of taxation either to the signers of these petitions or to these road commissioners? Can a tax be absolutely forced upon these taxpayers of the county, either by the individuals or by officials in whose appointment they have had no voice? The power of taxation is a power inherent in all governments. In a constitutional government, the people, by the constitution, confer it on the legislature. It is one of the highest attributes of sovereignty. It includes the power to destroy. It appropriates the property and labor of the people taxed. Unrestrained power of taxation necessarily leads to tyranny and despotism. Hence, in all free governments, the power to tax must be limited to the necessities for the purposes of government, and the agencies for local taxation should be fixed, and their powers limited, by organic law; and they should be so selected as to be directly answerable for their official acts to their local constituencies or districts to be taxed. If they act corruptly those directly interested may then remove them and appoint others. If those directly interested have no voice in their appointment, or power to remove them, they have no means of correcting their abuses. No other rule can secure those to be taxed from oppression and fraud on the part of the taxing officers. In *McCulloch v. Maryland*, 4 Wheat. 428, Marshall, C. J., said: 'The only security against the abuse of this power (the taxing power) is found in the structure of our government itself. In imposing a tax the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation.' This reasoning applies with equal force to all kinds of taxation, and has been applied as well to local assessments or improvement districts as to taxes levied in local, political, and municipal corporations.

\*  \*  \*  Self-taxation, or taxation by officers chosen by or answerable to those directly interested in the district to be taxed, is inseparable from that protection of the right of property that is either expressly or impliedly guaranteed by all written constitutions under our system of government. Of all the powers of government the one most liable to abuse is the power of taxation. If placed in hands irresponsible to the people of the district to be taxed, its abuse is a mere question of time. \*  \*.  \*  The act is a plain violation of the principle of self-taxation, and a clear invasion of the right of property. The legislature is not the fountain,— not the source,—of power. Under our system of government the legislature can exercise only such powers as the people have delegated to that body, either expressly or by necessary implic⁻tion, by the constitution. All rights not so delegated are retained by the people. The right of life, liberty, and property is among the inherent and inalienable rights that the people did not commit to the legislature. Constitutions are adopted and governments administered for the protection, and not for the destruction, of these reserved rights of the people. Illegal or oppressive taxation is destructive of the right of property, and is not government, under the constitution; but is misgovernment." *Parks v. Board of Commissioners*, 61 Fed. Rep. 436.

The legislature of the state of Michigan passed an act creating a board of park commissioners to be appointed by the governor, with authority to create an indebtedness, and the act was held unconstitutional. Mr. Justice Campbell, in specially concurring with other members of the court, said: "I am not willing, however, to leave out of view an objection which has seemed to me quite as fundamental as the one referred to, and more dangerous, if that be possible, in its tendencies. I think the very essence of municipal

existence consists in a government which allows no discretionary power beyond that of mere administration to be exercised without the *immediate or ultimate control of the freemen or their immediate representatives.* A city is, and must be, as I conceive, a unit for purposes of government; and all bodies employed in the service of the municipality, and not directly representing the freemen, must act as agencies subordinate to the council. If powers in any way involving the municipal prerogative can be given to any bodies except the common council, to the exclusion of any regulation or control of that body, they can all be so given, and the people may be entirely deprived of representative government. It is a misnomer to apply that term to a system where there is any legislative power over which the people's representatives have no control. A school district is as well organized a municipality as a city, and may co-exist with it in territory, in whole or in part, as a city may cover the territory of a county wholly or partially. There is no incompatibility between them, and both are separate, and in some sense independent, popular representative bodies exercising different functions. The duties of the others are no part of the ordinary concerns of town or city corporations. But from time immemorial every municipal government, properly so called, and acting within its peculiar sphere, has acted through its common council, composed either of the burgesses or their representatives, subject in some cases to checks and vetoes, but not subject to legislation or final action in defiance of their own decisions. Their supremacy cannot be given up by themselves any more than it can be taken from them. No doubt the state can limit their powers, but it cannot transfer them. The appointment and incorporation of boards as mere agencies is competent, and may be very convenient. But making them anything

but agencies is a direct invasion of representative government, and would bring into existence a class of cities unknown to our constitutions, and very different from the municipal corporations recognized by our constitution as the authorized recipients of local legislative power. Whether the law of 1871 contains any provisions obnoxious to this principle, it is not necessary to discuss. But, if there are such provisions, I do not conceive they could be made valid by any recognition from the city. Concurring entirely in the general views of my Brother Cooley, I have not deemed it necessary to do more than indicate very briefly my views on the point which he has waived, which, in my judgment, is inseparable from the principles underlying the decisions heretofore made in *People v. Hurlbut*, 24 Mich. 44, and *People v. Township Board of Springwells*, 25 Mich. 153. I therefore agree in the conclusion of my brethren." *People v. Common Council of Detroit*, 28 Mich. 228.

Under our constitution the power of taxation has been vested by the people in the legislature. Constitution Iowa, article 3, section 1; *City of Davenport v. Chicago, R. I. & P. R. Co.*, 38 Iowa 643. There is no express constitutional restriction or limitation upon the power of the legislature in this state, and that body may, for proper and legitimate purposes, confer the taxing power upon municipalities. 2 Dillon, Municipal Corporations, section 740; 25 Am. & Eng. Enc. Law, pp. 18, 71. Nevertheless, in the absence of such constitutional restriction, the power of the legislature to confer the right of taxation is limited by implication. *Prouty v. Stover*, 11 Kan. 235. So it is said in *Hanson v. Vernon*, 27 Iowa, 73: "It cannot be maintained that the constitution confers upon the state government absolute and unlimited legislative power, authorizing all laws affecting the rights and property of the people,

not expressly prohibited by that instrument.   *   *   *
There is, as it were, back of the written con-
stitution, an unwritten constitution, if I may use
the expression, which guaranties and well protects
all absolute rights of the people. The govern-
ment can exercise no power to impair or deny them.
Many of them may not be enumerated in the constitu-
tion, nor preserved by express provisions thereof, not-
withstanding they exist, and are possesed by the people
free from government interference." We say,
then, that there is an implied limitation upon the
power of the legislature to delegate the power
of taxation. This, of necessity, must be so, otherwise
the legislature might clothe any person with the
power to levy taxes, regardless of the will of those upon
whom such burdens would be cast, and such person
might be directly responsible to no one. Whatever the
effect of the constitutional provisions in Illinois and
Kansas may be, the reasoning of the cases is in line
with the views expressed by Judge Cooley, and it is
equally applicable to cases where there are no express
constitutional limitations. It is said that it is not true
that power to determine the rate of taxes must be com-
mitted to the proper legislative authority of the cor-
poration, and certain instances in this state are cited,
as the power given the executive council to determine
the rate of tax for state purposes. Code 1873, section
835. But counsel have cited no instance in the legisla-
tion of this state, and we have found none, where
the power to tax was conferred upon a board or officer
not elected by and immediately responsible to the
people, and we are unwilling to extend the right to del-
egate such power to any body or person not directly
representing the people. The danger which lies in del-
egating such power to any person or board not directly
responsible to the taxpayers is so forcibly set forth

in the citations we have made that we need not enlarge upon it. If the power to tax may be by them vested in a board of library trustees, against the will of the people, it may be reposed in any other body which is not directly accountable to the people.

Counsel for appellants rely upon the cases of *Mayor of Baltimore v. State*, 74 Am. Dec. 572, and *State v. District Court of Hennepin County*, 33 Minn. 235 (22 N. W. Rep. 625). The latter case, in its facts, is so different from the case at bar as not to support the contention of appellant; and the Maryland case sustained the constitutionality of an act authorizing the board of police commissioners to levy and collect taxes for the support of the police department of the city. If this case is sustainable at all, it is upon the theory that the state may insist upon the proper exercise of the police power by a municipality, and, if the municipality fails so to do, the state may arbitrarily provide therefor. This is on the theory that one of the objects of the government of the state is to preserve peace and good order.

We have treated this statute as, in effect, authorizing the library board to levy the tax. In fact, it in terms directs them to fix and determine the amount of the tax, which, upon being certified to the council, it must levy. The right to thus fix and determine is equivalent to the right to levy. Now, the uses to which this tax is to be put are local, and the benefits to be derived from such library must necessarily inure mostly to the people of the city of Des Moines. Such being the case, we think that the legislature had no power to vest the levying of this tax in a body not directly responsible to the people of the city. The levy and collection of a tax is a taking of the property of the taxpayer against his will, and such a necessary, arbitrary and far-reaching power ought

not to be conferred upon a body of persons who are not the direct representatives of the people, who are not elected by them, and who, therefore, are not directly responsible to them, unless the people assent thereto.

IV.    The remaining question is, have the people of the city of Des Moines in any manner assented to the exercise of the power of taxation attempted to be conferred upon and exercised by the board of library trustees?    The people of the city did by vote accept the provisions of the law as it then existed.   The law then did not authorize any increase of taxation, and the library was under the direct control and management of the city council, who were elected by the people.   By subsequent acts of the legislature a board of trustees was established, and their duties and powers fixed; the control and management of the library was by statute vested in said board, and the board was vested with the power of absolutely determining the amount of tax that should be levied. It will be seen that the people assented by their vote to maintaining a public library, which should be under the control of the council which they elected.   They never consented to the creation of a board of library trustees which should be in control of the library, and be substantially vested with the power to levy taxes without the consent and against the will of the people. The placing of the extraordinary power of taxation in a body not the direct creation of, or directly responsible to, the people, was in no way involved in the vote of the people had before such powers were conferred or thought of.   Here, by an act passed subsequent to the vote of the people, the legislature empowers an irresponsible board (irresponsible in the sense that they are not directly accountable to the people) to fix a tax levy limited in the amount which may be raised each year, but unlimited in duration, so that millions of dollars may be accumulated without consulting the

people, or their immediate representatives, the city council. It may be doubted if any statute of this state can be found wherein such extended and unlimited power as to duration of time has been granted to a body of persons to fix what taxes shall be levied for any such purpose. This law authorizes a levy annually upon the taxable property of the city for the purpose of purchasing real estate, and the erection of a building, and to create a sinking fund; absolutely no limit as to the number of years said tax may be levied. Under its provisions millions may be accumulated and spent, and if appellant's theory is correct the taxpayer who assented to the formation and maintenance of a public library simply was then voting upon himself a burden of taxation for a library building and ground which might be endless in duration as to the ultimate amount to be raised, and which might be invested in a building the cost of which would likewise be unlimited. That a body or board, not elected by the people, and not directly responsible to them, should have been clothed by the legislature with such extraordinary powers without proper safeguards to protect the people from unnecessary taxation,—which is confiscation,—is marvelous. The people of the city of Des Moines never assented by vote or otherwise to any such legislation. *Cornell v. People*, 107 Ill. 372.

Nor can we agree to the contention that, inasmuch as the people elect the city council and the mayor, and the mayor appoints the library board with the consent of the council, therefore such board is, in fact, selected by the people, or that thereby the people assented to the legislation creating the board and endowing it with the power to fix and determine the taxes to be levied. If such contention was correct, it would be difficult to find a case of an officer or board vested with taxing powers, no matter by whom appointed, when by the

same process of reasoning the original power could not be traced through the various offices or agencies to the people themselves. Suppose the act at bar had provided that the board of library trustees for the public library of the city could be appointed by the governor of the state, it would not be contended for a moment that the people, by voting for and electing the governor who appoints such a board, thereby gave their assent to such a mode of appointment. No more do they when they elect the mayor and council, whom they must elect in order that the proper business of the municipality may be carried on. Under such an argument any violation of the taxing power might be ultimately traced to the people, who are the original source of all political power in a government like ours. The power to determine and levy taxes is inherent in government. Its exercise for proper purposes is essential to the very existence of government. When exercised in a lawful manner, and by proper agencies of the state, the burdens imposed must be borne by those upon whom they fall; but when exercised by officers and bodies charged with no direct responsibility to the people the temptation to place upon the people unnecessary burdens under the guise of taxation, and to take from them a portion of their property not needed for legitimate purposes of government, is great. It may be admitted in the case before us that the board of library trustees is composed of high-minded, honorable men and women, and it may be that this board is better qualified to know what such tax should be than is the city council. However that may be, the principle is wrong, and the power of taxation attempted to be conferred upon the trustees is a long step in the direction of per-

mitting boards not elected by or directly responsible to the people to determine what burden the taxpayers' property shall bear. We hold that no officer and no board not elected by and immediately responsible to the people can be made the repository of such power. If this power was given to the city council, and it was abused, the people could, at least, prevent a recurrence of the wrong at the polls; but if it be reposed in a body not elected by the people the remedy is uncertain, indirect, and likely to be long delayed. The absolutely unlimited power of taxation, as to duration, attempted to be conferred by the act under consideration, is of itself a forcible reminder that the power to fix, determine, and levy a tax for local purposes should be conferred upon somebody which stands as the direct representative of the people, to the end that an abuse of such power may be speedily and directly corrected by those whose property must bear such burdens. The act in question is unconstitutional in so far as it undertakes to confer the arbitrary power upon the board of library trustees to fix and determine the amount of tax to be levied for the purposes therein mentioned, and the city council cannot be compelled to levy (regardless of any discretion) the amounts fixed by the library board, and certified to said council. The questions involved in the case were not raised or considered in *Orvis v. Board of Commissioners*, 88 Iowa, 674. The action of the district court in refusing a writ of mandamus and in rendering a judgment against the plaintiff for costs was correct, and the judgment is AFFIRMED.