JOHN VALLELLY AND B. F. BROCKHOFF V. THE BOARD OF PARK COMMISSIONERS OF THE PARK DISTRICT OF THE CITY OF GRAND FORKS, ET AL.

Opinion filed February 20, 1907.

**Municipal Corporations — Debt Limit — How Computed.**

1. Debts of a city contracted for paving and sewer purposes are not to be computed in ascertaining whether the debt limit has been exceeded. There is no general liability against the city for such indebtedness, except for the one-fifth portion of the cost of paving.

**Same.**

2. Bonds issued by an independent school district of the city of Grand Forks are not to be computed as debts of the city in ascertaining whether the debt limit has been exceeded.

**Constitutional Law — Delegation of Legislative Power.**

3. A law empowering a city council to determine by a vote whether the city will avail itself of the provisions of the law is not unconstitutional as a delegation to the council of legislative power.

**Same.**

4. The fact that the 1905 law (Laws 1905, page 256, chapter 143) creates a board to be appointed by the council whose powers over the control and government of parks are the same as those conferred by law upon the city council by former laws, does not render the 1905 law invalid.

**Municipal Bonds — Power of Municipality to Provide Interest.**

5. A municipality has power to provide for the payment of annual interest on bonds to be issued by it, although the law authorizing the issue of such bonds does not expressly authorize it to make provision for the payment of such bonds or annual interest thereon.

**Constitutional Law — Levy of Tax by Board Not Responsible to People.**

6. An act of the legislative assembly authorizing a board appointed by the city council without the consent of the people to levy general taxes is unconstitutional as a delegation of legislative power.

Appeal from District Court, Grand Forks county; *Fisk, J.*

Action by John Vallelly and another against the board of park commissioners of the park district of the City of Grand Forks and others. From an order sustaining a demurrer to the complaint, plaintiffs appeal.

Reversed.

*George A. Bangs,* for appellants.

. If an independent board is in fact an agency of the municipality, the debts created by it are the debts of such municipality and must be considered in fixing its constitutional debt limit. Gray on Limitation of Taxing Power 1110; Wilcoxen v. City of Bluffton, 54 N. E. 110; Orvis v. Park Commissioners, 56 N. W. 294.

Delegation of taxing powers must be to boards responsible to the people. 1 Cooley on Taxation p. 101; State v. Des Moines, 72 N. W. 639; Lipscomb v. Dean, 1 Lea, 546; Park Commissioners v. Detroit, 28 Mich. 227; Waterhouse v. Board, 8 Heisk. 857; Hinze v. Poe, 92 Ill. 406.

Two distinct municipal bodies cannot exercise the same powers, jurisdiction and privileges at the same time in the same territory. 1 Dillon Mun. Cor. (4th Ed.) Sec. 184; Wilcox on Municipal Cor. 27; Grant on Corporations 18; 20 Ency. of Law (2nd Ed.) 1150; 15 Am. and Eng. Enc. (1st Ed.) 1007; Taylor v. Ft. Wayne, 47 Ind. 274; Park Com. v. Chicago, 152 Ill. 392.

*Scott Rex*, for respondent.

Liability for expenditures upon property for specific benefit received are not included in general municipal indebtedness. Cooley on Taxation (3rd Ed.) 175.

Limitations upon the power to incur municipal indebtedness applies only to the municipality, and not to tax-levying bodies with the same territorial jurisdiction. Gray on Limitation of Taxing Power, Sec. 2148; Hyde v. Ewert, 91 N. W. 474; Wilson v. Board of Trustees, 27 N. E. 203; Adams v. East River Institute, 136 N. Y. 52, 32 N. E. 622.

A state can delegate taxing powers to a board appointed by another board. Redmon v. Chacey, 7 N. D. 231, 73 N. W. 1081; Erickson v. Cass County, 11 N. D. 494, 92 N. W. 941; Hagar v. Reclamation District, 111 U. S. 728, 28 L. Ed. 569; State v. West Duluth Land Co., 78 N. W. 115; Mayor v. State, 15 Md. 376, 74 Am. Dec. 572; State v. District Court, 22 N. W. 625; Brodbine v. Inhabitants of Revere, 66 N. E. 607; Stone v. Charlestown, 114 Mass. 214; West Chicago Park Commissioners v. City of Chicago, 38 N. E. 697; West Chicago Park Commissioners v. Sweet, 47 N. E. 728; West Chicago Park Commissioners v. Farber, 49 N. E. 427; Turner v. City of Detroit, 62 N. W. 405; Commissioners v. Common Council, 80 Mich. 667, 45 N. W. 508; State v. George, 29

Pac. 356; Oren v. Bolger, 87 N. W. 366; Territory v. Scott, 3 Dak. 357, 20 N. W. 401; City of Little Rock v. Town, 79 S. W. 785.

Power to issue bonds carries with it everything necessary to be done in connection therewith.  2 Lewis' Southerland Statutory Construction, Sec. 510; 27 Am. and Eng. Enc. of Law (2nd Ed.) 872; Cooley on Taxation (3d Ed.) 467.

MORGAN, C. J.  This is an action brought to restrain the board of park commissioners of the city of Grand Forks from issuing bonds in the sum of $25,000 to be used for park purposes in said city. The action is brought by the plaintiffs as electors and property owners of said city.  The park board commissioners were appointed by the city council of the city of Grand Forks under chapter 143, p. 256, of the Laws of 1905, entitled "An act creating park districts and for the government thereof, creating a board of park commissioners, conferring power and authority upon such board and district and providing rules for the government thereof."  Section 1 of said act provides that any incorporated city in the state "may by a two-thirds vote of its council by yeas and nays, at a regular meeting thereof take advantage of the provisions of this act."  Section 2 provides that "any city desiring to take advantage of this act shall do so by ordinance expressing its desire and intent so to do, whereupon the territory embraced in such city shall be deemed and it is hereby declared to be a park district of the state of North Dakota."  Section 3 provides that each Park District shall be known as "Park District of the city," and as such "shall have a seal and perpetual succession with power to sue and be sued; contract and be contracted with; acquire by purchase, gift, devise or otherwise and hold, own, possess and maintain real and personal property in trust for the purpose of parks, boulevards and ways and to exercise all the powers hereinafter designated or which may be hereafter conferred upon it."  The park commission is further empowered by the act to condemn land for park purposes, and is given sole and exclusive authority to maintain, govern, and improve the same and to lay out, grade, pave, or otherwise improve any street in, around, or through said park and to erect, maintain. and govern all buildings and pleasure grounds in said park; to pass ordinances necessary for the regulation and government of the park and to enforce the same; to levy special assessments on all property specally benefitted by the establishment of said park; to appoint such engineers, surveyors, clerks, and other officers, including such

police force as may be necessary, and define their duties and fix their compensation; to issue negotiable bonds of the park district in a sum not exceeding two per cent of the value of the taxable property therein situated for the purchase of lands for such park and the improvement thereof, and, upon an affirmative vote of the electors of such district, such bonds may be issued in the aggregate not to exceed 5 per cent of the assessed value of such property. Section 5, subd. 7 (page 258), provides that the park board shall have power to "levy taxes upon all the property within said district for the purpose of maintaining and improving said parks, boulevards and ways and to defray the expenses of said board." The indebtedness of the park district is by the act expressly limited to 5 per cent of the valuation of the assessable property therein. The park commission initiated proceedings to issue $25,000 bonds under the provisions of this act. The plaintiff procured a preliminary injunction restraining it from issuing the bonds. The defendant demurred to the complaint on which the injunctional order was procured, and the trial court sustained the demurrer. The plaintiffs have appealed from the order sustaining the demurrer. The objections urged by the plaintiffs against the law under which the defendants are proceeding and against the contemplated proceedings of the park commission are numerous and will be considered in the order in which they are presented.

It is first contended that the bonds proposed to be issued will create a debt against the city of Grand Forks in excess of the debt limit. Both parties concede that the proposed indebtedness by the issue of these bonds will be an indebtedness of the city of Grand Forks. Whether it will exceed the debt limit will depend upon the fact whether the debts of the independent school district of the city of Grand Forks and the city indebtedness created by the issuing of paving and sewer bonds or warrants are debts of the city within the meaning of the constitution limiting the indebtedness to be incurred by cities. It is also conceded that one-fifth of the bonds issued by the city for paving its streets is a city debt proper and to be computed as such in determining what the debts of the city are. The paving and sewerage bonds or warrants were issued under the laws authorizing cities to issue such bonds or warrants. These laws expressly provided for the payment of the costs of these improvements by assessments to be made against the property improved, and such assessments, when paid into the treasury, constituted a fund out of

which the warrants issued were to be paid. The statute (chapter 41, p. 47, Laws of 1897) expressly provided that upon payment by the city of one-fifth of the cost of paving such payment should be considered a full satisfaction of all claims against the city for such paving. The contracts for the paving and sewers expressly stated that the city assumed no liability, and without such provision we are satisfied that the acts under which these improvements were made and the indebtedness incurred cannot be construed, except as to negative such general liability. The contracts having been entered into under these acts, the holders of the warrants can claim no rights thereunder not based on the provisions of these laws. They contracted for a lien and payment out of a particular fund, and cannot claim a general liability unless the city wrongfully diverts this fund. It is generally held that constitutional provisions limiting corporate indebtedness are held not to apply to assessments upon property for improvements. Cooley on Taxation p. 175; Davis v. Des Moines, 71 Iowa 500, 32 N. W. 470; Raleigh v. Peace, 110 N. C. 32, 14 S. E. 521, 17 L. R. A. 330.

It is also claimed that the bonded indebtedness of the independent school district of the city of Grand Forks should be included in the computation of the city's indebtedness. The boundaries of this school district are coterminous with the territory embraced in the city. The functions of the school district are entirely separate from those of the city. The scope of the powers of the school district are outside that of the city municipal government proper. It acts independently under express statutory authority, and is in no sense an agent of the city. The indebtedness inhibited by the constitution is that contracted by the city for its own purposes, and does not refer to the indebtedness of the school district, an independent and distinct corporation organized for a special purpose not within the province of the city government proper. The precedents generally are to that effect. Gray on Limitation of Taxing Power, sections 2148, 2101; Wilson v. Board, 133 Ill. 443, 27 N. E. 203; Adams v. East River Institute, 136 N. Y. 52, 32 N. E. 622; Hyde v. Ewert, 16 S. D. 133, 91 N. W. 474; Kennebec Water District v. Waterville, 96 Me. 234, 52 Atl. 774; Tuttle v. Polk, 92 Iowa, 433, 60 N. W. 733. There is therefore no force in the contention that the debt limit will be exceeded by the issue of the proposed bonds. Adding the amount of the proposed bonds to the city's present indebtedness, there is still left a considerable sum over

and above the aggregate 12 per cent limit of debts that can be legally imposed upon the city. This would be true even if the park district commissioners were to issue bonds to create an indebtedness equal to 5 per cent of the valuation of the property; that being the aggregate percentage of indebtedness permitted by the act of 1905.

It is claimed by the appellants that the act is void because it creates a municipal corporation authorized to exercise powers over territory under the control of the city council, and the two corporations cannot exercise the same powers coextensively over the same territory. It is true that the city council had authority to lay out parks, and make rules for the government thereof. The city council adopted the provisions of the 1905 law by express action, and thereby surrendered all control over the parks of the city. Having done so, the law became operative, and the city council was excluded from any authority over the park conferred upon the park district board by the 1905 law. This law by implication repealed the prior law so far as the former laws conferred authority upon the park board to perform duties that were before vested in the city council. We find no case holding special park laws inoperative for that reason, and the objection would lie to all laws providing for the government and control of parks in cities. As to certain matters, the legislature undoubtedly has power to classify or subdivide powers of local government, and to place the power of such government in different agencies or instrumentalities. The power to regulate and govern parks in cities is very generally conferred upon special boards. It is further claimed that the act delegates to the city council legislative power; that is, the power to declare whether the act shall become operative or not. The act is a complete act, and was such when it was approved by the governor. It is not denied that a law complete in itself may be made to become operative upon the happening of a certain event or contingency. The claim is that the happening of such event or contingency must be determined by the people by vote, and that it cannot be left to the action of the city council. The law is a general law, and affects all cities of the state. The city council of Grand Forks simply elected, as it was authorized to do, whether the provisions should be put in force and become applicable to that city. A similar question has been decided by the court recently, and the conclusion reached that the county commissioners were properly authorized to determine whether a law prescribing

the manner of collecting taxes should become applicable to the county over which they had jurisdiction. Picton v Cass Co., 13 N. D. 242, 100 N. W. 711. In that case the question was carefully considered and the authorities collected, and this makes it unnecessary to further discuss the question at this time.

The act in question authorizes the issuing of bonds, but makes no provision for the raising of funds annually or otherwise for the payment of interest on the same, or for the ultimate payment thereof. It is claimed that this is in violation of secion 184 of the constitution, making it incumbent on any city, county, township, town, school district, or any other political subdivision incurring any indebtedness to make provision for payment of the interest annually and of the principal when due. Conceding that this section applies to park boards, we do not think that the law is invalid for that reason, nor that the proceedings should be restrained on that ground. The act gives express power to incur a bonded indebtedness in a limited amount. This is an implied authorization to make provision for the payment of the same. The express power to incur an indebtedness is held to include within such power the power to do all things necessary to effectuate the purpose of the act. Dillon on Mun. Corp., section 741; 1 Cooley on Taxation (3d Ed.) p. 467; Hall v. Chippewa Falls, 47 Wis. 267; 2 N. W. 279.

A more perplexing question remains to be disposed of. The act authorizes the park board commissioners to levy annual taxes for the purpose of making effectual the objects thereof. The people have never had an opportunity directly to adopt the act by vote nor had they any direct voice in the appointment of the commissioners; they being appointed by the city council, without any right on the part of the people directly to assent to or approve of such appointments. In other words, the taxing power is conferred upon a board appointed by a city council without the assent of the people. The contention is that the power to levy a tax cannot be delegated to a person or body in whose appointment the people have not directly assented by popular vote. The taxing power is vested by the constitution in the legislature. Section 130 of the constitution reads as follows: "The legislative assembly shall provide by general law for the organization of municipal corporations, restricting their powers as to levying taxes and assessments, borrowing money, and contracting debts," etc. It is conceded, and could not reasonably be doubted, that the power to levy taxes is a legislative power.

The legislative power is by the constitution vested in the senate and house of representatives. Whether the legislature can enact a law authorizing a person or body not elected by the people, or appointed without their assent, to levy taxes, is the question to be determined. This raises a constitutional question, which should be determined with caution. Unless such a law is clearly repugnant to some constitutional provision, it should be sustained. It is a general principle that legislative powers cannot be delegated. A general exception exists to the effect that legislative powers may be delegated in reference to matters of local government or concern. The power of levying taxes by municipal corporations or other governmental agencies may be delegated; and section 130 of the constitution plainly recognizes the power of the legislature to delegate such power to municipal corporations. Under this section the legislature must provide for the organization of municipal organizations, and restrict the power of such corporations in levying taxes. This shows that taxation matters for local government may be delegated to municipal corporations. The park board would probably be deemed a municipal corporation within the meaning of this section if the people had been given a voice in its election. Whether that is true or not, and what the precise character or legal status of the park board commission is, is immaterial.

It has become a well recognized principle of constitutional law that local boards and councils elected by the people are bodies to which the power to tax may be delegated. This is so upon the principle that the legislative power to levy taxes rests with the people; and, so long as the people have a voice in the selection of bodies to which the power to tax is delegated, the constitutional restriction is not violated. The power of the legislature to delegate the authority to levy taxes is generally held to be limited to boards or councils elected by the people, and is not sanctioned when delegated to those appointed, when the appointment has not been assented to by a vote of the people. This limitation is recognized under the principle that all powers of taxation are reposed in the people, and, unless the people assent by vote to the appointment or election of the taxing authorities, the law authorizing such powers of taxation to those not thus assented to is repugnant to the constitution, and not to be upheld. The power to levy taxes is one of the most important of legislative functions. If abused, it may amount to a practical confiscation of property. A power so far-reaching should

not be reposed in any one not directly responsible to the people. If appointed by the people, and abuses follow, a remedy by removal is in their hands; otherwise, redress is so remote as to be without practical results. Regardless of section 130 of the constitution, the delegation of the taxing power to a person or board without some assent by the people could not be sustained. The power to tax is a legislative power, and cannot be delegated to boards or commissions whose appointment has not been in some way assented to by the people. We deem this interpretation of the constitution sound, and that it should not be deviated from.

These principles are sustained by the authorities generally. Judge Cooley, in his great work on taxation, says on page 81: "It is a general rule of constitutional law that a sovereign power conferred by the people upon any one branch or department of the government is not to be delegated by that branch or department to any other. This is a principle which pervades our whole political system, and, when properly understood, permits of no exception, and it is applicable with peculiar force to the case of taxation. The power to tax is a legislative power. The people have created a legislative department for the exercise of the legislative power, and with that power lies the authority to prescribe the rules of taxation, and to regulate the manner in which those rules shall be given effect. * * * There is, nevertheless, one clearly defined exception to the rule that the legislature shall not delegate any portion of its authority. The exception, however, is strictly in harmony with the general features of our political system, and it rests upon an implication of popular assent, which is conclusive."

In State v. Mayor of Des Moines, 103 Iowa 76, 72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep. 157, it was said: "We say, then, that there is an implied limitation upon the power of the legislature to delegate the power of taxation. This, of necessity, must be so; otherwise, the legislature might clothe any person with the power to levy taxes, regardless of the will of those upon whom such burdens would be cast, and such person might be directly responsible to no one. * * * If the power to tax may, then, by them be vested in a board of library trustees against the will of the people, it may be reposed in any other body which is not directly accountable to the people." In Parks v. Board of Commissioners (C. C.) 61 Fed. 436, it was said: "* * Self-taxation, or taxation by officers chosen by or answerable to those directly interested in the district

to be taxed, is inseparable from that protection of the right of property that is either expressly or impliedly guaranteed by all written constitutions under our system of government. Of all the powers of government the one most liable to abuse is the power of taxation. If placed in hands irresponsible to the people of the district to be taxed, its abuse is a mere question of time. * * * The act is a plain violation of the principle of self-taxation, and a clear invasion of the right of property. The legislature is not the fountain—not the source—of power. Under our system of government, the legislature can only exercise such powers as the people have delegated to that body, either expressly or by necessary implication, by the constitution. All rights not so delegated are retained by the people." In Harward v. Drainage Co., 51 Ill. 130, it is said: "The power of taxation is, of all powers of government, the one most liable to abuse, even when exercised by the direct representatives of the people; and, if committed to people who may exercise it over others without reference to their consent, the certainty of its abuse would simply be a question of time. No person or class of persons can be safely intrusted with irresponsible power over the property of others, and such a power is essentially despotic in its nature, and violative of all just principles of government. It matters not that, as in the present instance, it is to be professedly exercised for public uses by expending for the public benefit the tax collected. If it be a tax, as in the present instance, to which the persons who are to pay it have never given their consent, and imposed by persons acting under no responsibility of official position, and clothed with no authority of any kind, by those whom they propose to tax, it is to the extent of such tax, misgovernment of the same character which our forefathers thought just cause of revolution. In Parks v. Commissioners, supra, it is further said: "Does the constitution of the state of Kansas authorize the legislature to delegate the power of taxation either to the signers of these petitions or to these road commissioners? Can a tax be absolutely forced upon these taxpayers of the county, either by the individuals or by officials in whose appointment they have had no voice? The power of taxation is a power inherent in all governments. In a constitutional government the people, by the constitution, confer it on the legislature. It is one of the highest attributes of sovereignty. It includes the power to destroy. It appropriates the property and labor of the people taxed. Unrestrained power of taxation necessarily leads to

tyranny and despotism. Hence, in all free governments, the power to tax must be limited to the necessities for the purposes of government, and the agencies for local taxation should be fixed and their powers limited by organic law; and they should be so selected as to be directly answerable for their official acts to their local constituencies or districts to be taxed. If they act corruptly, those directly interested may then remove them and appoint others. If those directly interested have no voice in their appointment, or power to remove them, they have no means of correcting their abuses."

In a concurring opinion to People v. Common Council, 28 Mich. 228, 15 Am. Rep. 202, Justice Campbell said:      "* * * I think the very essence of municipal existence consists in a government which allows no discretionary power beyond that of a mere administration to be exercised without the immediate or ultimate control of the freemen or their immediate representatives. A city is, and must be, as I conceive, a unit for purposes of government; and all bodies employed in the service of the municipality, and not directly representing the freemen, must act as agencies subordinate to the council. If powers in any way involving the municipal prerogative can be given to any bodies except the common council, to the exclusion of any regulation or control of that body, they can all be so given, and the people may be entirely deprived of representative government. It is a misnomer to apply that term to a system where there is any legislative power over which the people's representatives have no control. A school district is as well organized a municipality as a city, and may coexist with it in territory, in whole or in part, as a city may cover the territory of a county wholly or partially. There is no incompatibility between them, and both are separate, and in some sense independent, popular representative bodies, exercising different functions. The duties of the others are no part of the ordinary concerns of town or city corporations. But from time immemorial every municipal government, properly so called, and acting within its peculiar sphere, has acted through its common council, composed either of the burgesses or their representatives, subject in some cases to checks and vetoes, but not subject to legislation or final action in defiance of their own decisions. Their supremacy cannot be given up by themselves any more than it can be taken from them. No doubt the state can limit their powers, but it cannot transfer them. The appointment and incorporation of boards as mere agencies is competent, and may be very convenient. But making

them anything but agencies is a direct invasion of representative government, and would bring into existence a class of cities unknown to our constitutions, and very different from the municipal corporations recognized by our constitution as the authorized recipients of local legislative power." See, also, Cooley on Cons. Lim. p. 163, and cases cited; Dillon on Mun. Corp., section 746, and cases cited; Gray on Lim. of Taxing Power, section 552; Waterhouse v. Board, 8 Heisk. (Tenn.) 857; Hinze v. People, 92 Ill. 406. We are forced to the conclusion that the act in question is repugnant to the constitution as delegating the power to levy taxes to a board appointed without the assent of the persons whose property is to be taxed.

Order reversed. All concur.

Fisk, J., being disqualified in this case, Judge Templeton, of the First Judicial district, sat by request.