In the Matter of the Confirmation and Approval of the Master Contract between the **GARRISON DIVERSION CONSERVANCY DISTRICT** and the United States and of the *Four Three-way Contracts* among the Garrison Diversion Conservancy District, the United States, and respectively, the Dickey-Sargent, the Lincoln Valley, the Warwick-McVille and the James River Irrigation Districts.

No. 8326.

Supreme Court of North Dakota.

June 30, 1966.

Rehearing Denied July 20, 1966.

Helgi Johanneson, Atty. Gen., and Paul M. Sand, Asst. Atty. Gen., Bismarck, for Garrison Diversion Conservancy District.

Roy A. Holand, LaMoure, amicus curiae.

KNUDSON, Judge.

This matter comes to us pursuant to the provisions of Chapter 32–24, North Dakota Century Code, upon four questions certified by the District Court of LaMoure County, the Honorable Adam Gefreh, Judge, presiding. The four questions certified to this Court by the District Court are as follows:

1. Is Chapter 384 [sic 348] of the 1955 Session Laws, as amended by Chapter 412 of the 1959 Session Laws, now Chapter 61–24 of the North Dakota Century Code, valid under the provisions of Sections 25 and 13 of the North Dakota Constitution, particularly as to § 61–24–08 of the North Dakota Century Code which vests certain powers and duties upon the Garrison Diversion Conservancy District and the manner in which such powers are being exercised by said Garrison Diversion Conservancy District in the Master Contract, Exhibit "F"?

2. Is § 61–24–08(9) and Paragraph 4 on Page 2 of the resolution, Exhibit "Q", as adopted by the Garrison Diversion Conservancy District in compliance with the Master Contract, Exhibit "F", valid under the provisions of Section 176 of the North Dakota Constitution where all lands located within the Garrison Diversion Conservancy District pursuant thereto will be assessed and taxed regardless whether or not said lands are within an established irrigation district of the Garrison Diversion Conservancy District?

3. Is § 61–24–08(2) valid under the provisions of Section 14 of the North Dakota Constitution, where the purpose of the taking or the exercise of eminent domain is to provide waterways and canals upon or through which water will flow, which water is for the use and

benefit of private persons as well as for public purposes such as public recreation, game and fish, and wildlife, and other related programs, all as provided for in the Master Contract, Exhibit "F"?

4. Does the Garrison Diversion Conservancy District, if Chapter 61–24 of the North Dakota Century Code is valid, have the authority to carry out the provisions of the Master Contract under the provisions of Chapter 61–24 of the North Dakota Century Code?

The District Court answered all of these questions in the affirmative.

This proceeding was initiated by the Board of Directors of the Garrison Diversion Conservancy District by a petition presented to the District Court for LaMoure County praying that the proceedings preliminary and incident to the making of the Master Contract between the Garrison Diversion Conservancy District and the United States, and of the Four Three-way Contracts among the Garrison Diversion Conservancy District, the United States, and respectively, the Dickey-Sargent, the Lincoln Valley, the Warwick-McVille and the James River Irrigation Districts, and the assessment and levy of a tax to meet the obligations of said Garrison Diversion Conservancy District under said contracts, and all special actions taken in connection therewith, be examined, approved and confirmed by the court. A hearing was held thereon, as provided by law upon due notice, at which time testimony and documentary evidence was introduced and received by the court. No adverse appearance was made or filed in writing or in person by anyone. The proceedings taken by the Garrison Diversion Conservancy District were reviewed and approved by the District Court. The Court, upon the motion of the petitioner, certified the four questions to this Court for determination "deeming the issues before it to depend principally or wholly upon the applicable law thereto, and that the construction or interpretation of the applicable laws are of great moment and of vital importance to the cause before the Court."

The District Court answered the questions in the affirmative and said "that the proper answers are in doubt but are vital and of great moment in the cause and will be principally determinative of said cause and are not frivolous or interlocutory in nature."

The petitioners set forth in their brief the reasons for presenting these certified questions to this Court, as follows:

The certified questions are before this Court by virtue of jurisdiction conferred upon the District Court by § 61–24–15 of the North Dakota Century Code. While the mechanics of Chapter 32–24 were employed to submit the questions before this Court, the underlying reason which caused this matter to be submitted to the Supreme Court was and is the necessity for same by reason and provisions of the Master Contract and the position adopted by the United States Government.

The questions are not of an interlocutory nature, nor are they frivolous. They are of great importance. The entire Garrison Diversion Conservancy District Project rests upon a favorable determination of the questions submitted. Pursuant to the provisions of the Master Contract and the firm position taken by the United States Government, it is imperative that the Court consider the questions certified and act favorably thereon so that the project which has been in the embryo stage for many years can now become a reality. The condition imposed by the United States Government in its firm stand is one that we have no control over. If we, i. e., the State of North Dakota, wish to have the Garrison Diversion Conservancy Project, these are the conditions under which it can be obtained.

The necessity for obtaining approval and confirmation of this contract by the Supreme Court of the State of North Dakota

is stated by Mr. Roy A. Holand, amicus curiae, as follows:

Under its broad and well recognized power to develop the natural resources of this nation, the United States has proposed to build the Garrison Diversion Unit. This is a multipurpose project which will develop the resources of water and soil of the area comprising the Garrison Conservancy District. The purposes served by this project will be irrigation, municipal and industrial water supply, fish and wildlife development and recreational development including the replenishment and improvement of lakes in the project area.

Legislation authorizing the construction of the initial stages of this project was passed by Congress in the act of August 5, 1965 (79 Stat. 433). In order to proceed further with the steps necessary to get construction under way, there were certain things that had to be done by the Garrison Conservancy District and local water users. This included the organization of irrigation district and county park boards and the approval of proposed contracts by irrigators in organized irrigation districts comprising at least 100,000 acres. This step has been accomplished through the elections and signing of proposed contracts by the four irrigation districts who are referred to in the three-way contracts mentioned in these proceedings.

The second requirement is that of executing a master contract between the United States and the Garrison Diversion Conservancy District and the approval and confirmation of this contract by the Supreme Court of the State of North Dakota. The necessity for such approval is written into the contract itself and is insisted upon as a necessary prerequisite by the United States. It is also provided for by North Dakota statute and the procedure to be followed is outlined therein in 61–24–15 of the North Dakota Century Code.

Accordingly, the proceedings for the approval and confirmation of this contract were brought in the District Court under the provisions of § 61–24–15, and certified questions presented to this Court under the provisions of Chapter 32–24, entitled "Certification of Question of Law to Supreme Court."

Any question may be certified in any cause in the district court, where the issue of the same will depend principally or wholly on the construction of law applicable thereto and such construction or interpretation is in doubt and vital, or of great moment in the cause, in accordance with the provisions of § 32–24–01, as follows:

Where any cause is at issue, civil or criminal, in any district court or county court with increased jurisdiction in this state and the issue of the same will depend principally or wholly on the construction of the law applicable thereto, and such construction or interpretation is in doubt and vital, or of great moment in the cause, the judge of any such court, on the application of the attorney for the plaintiff or defendant in a civil cause, and upon the application of the attorneys for the plaintiff and defendant in a criminal cause, may halt all proceedings until such question shall have been certified to the supreme court and by it determined.

The certification of the question is in the sound discretion of the trial judge, and the supreme court may refuse to consider the same if it is frivolous, or is merely interlocutory in its nature, or otherwise not of sufficient importance to determine the issue in the cause at bar, as provided by § 32–24–02, as follows:

In all actions, both civil and criminal, the matter of certifying a question shall be in the sound discretion of the trial judge, and the supreme court may refuse to consider the same if it is frivolous, or is merely interlocutory in its nature, or otherwise not of sufficient importance to determine the issues in the cause at bar.

We have considered heretofore what is required in the consideration of certified questions of law permitted under Chapter 32-24. In City of Grand Forks v. Grand Forks County, (N.D.1965), 139 N.W.2d 242, at 248, we said:

> The trial court must first exercise its discretion in determining that the questions to be certified are doubtful and it must be made to appear that the case in which they arise will depend wholly or principally upon the construction of law applicable to the questions certified. [Citations omitted.]

> The questions of law must be clearly and distinctly stated. [Citations omitted.] They should not involve questions of fact or mixed law and fact. [Citations omitted.]

We are of the opinion that the proceedings here met with the requirements of Chapter 32-24, N.D.C.C., and we will therefore proceed to answer the questions.

The pertinent parts of the Findings of Fact which set out concisely the factual background of this matter are as follows:

## III.

That the Garrison Diversion Conservancy District was created by the Legislature of the State of North Dakota in 1955, (S.L.1955, Chapt. 348, now sec. 61-24-02, NDCC), to provide for the more effective development and utilization of the land and water resources of the State of North Dakota, through the construction of the Garrison Diversion Unit of the Missouri River Basin Project, said original District encompassed the following counties, to-wit: Barnes, Benson, Bottineau, Cass, Dickey, Eddy, Foster, Grand Forks, Griggs, Lamoure, McHenry, McLean, Nelson, Pierce, Ramsey, Ransom, Renville, Sargent, Sheridan, Stutsman, Ward and Wells, and as permitted by the provisions of said chapter the following counties became a part of said district under the procedures described therein: Traill, Richland and Steele.

## IV.

That construction of the initial stages of the Garrison Diversion Unit of the Missouri River Basis [sic] Project was authorized by Congress in the Act of August 5, 1965, (79 Stat. 433).

## V.

That on November 5, 1965, plans for the construction of facilities and works of the said Garrison Diversion Unit were filed with the Secretary of the Garrison Diversion Conservancy District by representatives of the Bureau of Reclamation and that the same were thereupon made available and open to public inspection.

## VI.

That on November 10, 1965, the petitioners, as the Board of Directors of the Garrison Diversion Conservancy District, were notified by a representative of the Bureau of Reclamation that as a condition precedent to the initiation of construction of the Garrison Diversion Unit, it would be necessary for the Garrison Diversion Conservancy District to enter into the following contracts as principal and guarantor for the repayment of a part of the cost incurred or to be incurred in the construction, operation and maintenance of works of the said Garrison Diversion Unit:

1. Master Contract between the Garrison Diversion Conservancy District and the United States;

2. Three-way Contract among the Garrison Diversion Conservancy District, the United States, and the Dickey-Sargent Irrigation District;

3. Three-way Contract among the Garrison Diversion Conservancy District, the United States, and the Lincoln Valley Irrigation District;

4. Three-way Contract among the Garrison Diversion Conservancy District, the United States, and the Warwick-McVille Irrigation District; and

5. Three-way Contract among the Garrison Diversion Conservancy District, the United States, and the James River Irrigation District;

that the form and content of said contracts has been under study by the petitioners or their predecessors since January 25, 1959.

### VII.

That on November 19, 1965, the Board of Directors of the Garrison Diversion Conservancy District, by resolution duly enacted at a duly convened and conducted meeting, called three public hearings on said contracts at Jamestown, Harvey and Devils Lake, North Dakota, at the hour of 10:00 a. m. on December 14, 15 and 16, 1965, respectively; that notices of said hearings and of their hour, date, place and site, and the fact that anyone interested in or affected by such contracts could appear and show cause, if any, why such proposed contracts should or should not be approved were thereupon published on December 2, 1965, in five newspapers of general circulation within the Garrison Diversion Conservancy District, said newspapers being the Fargo Forum of Fargo, Cass County; the Grand Forks Herald of Grand Forks, Grand Forks County; the Minot Daily News of Minot, Ward County; the Devils Lake Journal of Devils Lake, Ramsey County, and the Jamestown Sun of Jamestown [, Stutsman] County; that on December 14, 15 and 16, 1965, said three public hearings were duly and respectively held and conducted at Jamestown, Harvey and Devils Lake, North Dakota; that on December 16, 1965, the said Board of Directors of the Garrison Diversion Conservancy District, after considering the terms and conditions of said proposed contracts, and the support therefor and objections thereto, duly adopted a resolution approving such contracts.

### VIII.

That on November 24, 1965, pursuant to sec. 61-02-26 of the North Dakota Century Code, plans, purposes and contemplated action with respect to the said Garrison Diversion Unit and the said proposed five contracts were submitted to the State Water Conservation Commission which thereafter, on December 10, 1965, approved said plans, purposes, action and contracts.

### IX.

That on January 26, 1966, pursuant to a duly enacted resolution of the Board of Directors of said Garrison Diversion Conservancy District, the said Master Contract was duly executed on behalf of said Garrison Diversion Conservancy District and the United States; and that thereafter, the said Four Three-way Contracts were similarly executed on behalf of the Garrison Diversion Conservancy District, and, respectively, the Dickey-Sargent District on March 1, 1966, the Lincoln Valley District on March 2, 1966, the Warwick-McVille and the James River Irrigation Districts on March 1, 1966, each executing party being thereunto duly authorized in accordance with the statutes applicable; and that the United States is prepared and will execute same upon approval of said contracts by the Courts.

### X.

That on January 26, 1966, following execution of said contracts, the Board of Directors of said Garrison Diversion Conservancy District, at a duly called and convened meeting, did adopt a resolution that a tax be assessed and levied upon all the taxable property within said Garrison Diversion Conservancy District and directed that such tax be levied annually on each dollar of the taxable valuation in said Garrison Diversion Conservancy

District until the contract obligations have been paid, or a sufficient fund accumulated to pay the same; and that a certified copy of such resolution was thereupon mailed to the county auditor of each county in said Garrison Diversion District, whereupon each of the said auditors became obliged to spread the levy specified in such resolution for the current year and annually thereafter as required by such resolution and the statutes applicable.

## XI.

That the United States, through its resolution of the Department of Interior, has been compelled and is taking the position that the validity and legality of the proceedings leading to the making of the contract and including the Master Contract entered into by the United States and the G.D.C.D. which incorporated the Three-way Contracts among the United States, the G.D.C.D., and respectively the Dickey-Sargent, the Lincoln Valley, the Warwick-McVille, and James River Irrigation Districts, be submitted for a judicial definitive determination and approval to which the petitioners acceded, and that unless so reviewed and approved, the contract will not be binding on the United States, and the project would be jeopardized as to appropriation and the project might not be implemented without further corrective action.

## XII.

That the G.D.C.D. is required to exercise the power of eminent domain to acquire lands upon which canals and waterways are to be constructed through which water will flow and that said land acquired will serve beneficial to private persons as well as public purposes such as recreation, game and wild life, and other related activities.

The Garrison Diversion Conservancy District was created by the Legislature under the provisions of § 61-24-02, where-

in it was provided "[s]uch district shall be a governmental agency, body politic and corporate with the authority to exercise the powers specified in this chapter, or which may be reasonably implied."

The Legislature declared that the Garrison Diversion Conservancy District is for a public purpose in § 61-24-01, wherein the Legislature said:

It is hereby declared that more effective development and utilization of the land and water resources of this state, protection and preservation of the benefits therefrom, opportunity for greater economic security, protection of health, property and enterprise, and the promotion of the prosperity and general welfare of all of the people of North Dakota involve, necessitate and require the exercise of the sovereign powers of the state and concern a public purpose, the accomplishment of which, among other things, demands, and it is hereby declared necessary, that the Garrison Diversion Unit of the Missouri River Basin Project as authorized by act of Congress approved December 22, 1944 (58 Stat. 887), and acts amendatory thereof and supplementary thereto, be established and constructed:

1. To provide for the future economic welfare and prosperity of the people of this state, and particularly of the people residing in the area embraced within the boundaries of the conservancy district created by this chapter;

2. To provide for the irrigation of lands within the sections of such district periodically afflicted with drought, and to stabilize the production of crops thereon;

3. To replenish and restore the depleted waters of lakes, rivers and streams in such district, and to stabilize the flow of said streams;

4. To replenish the waters, and to restore the level of Devils Lake, Stump Lake, Lake Williams and Turtle Lake;

5. To make available within the district, waters diverted from the Missouri River for irrigation, domestic, municipal and industrial needs, and for hydro-electric power, recreation and other beneficial and public uses.

The declaration of our Legislature that such projects are devoted to the public use, while not necessarily conclusive upon the courts, is entitled to great weight. It is not the prerogative of courts to interfere with the legislative finding unless it clearly appears to be erroneous and without reasonable foundation. Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849.

A public purpose or public business has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents within a given political division, as, for example, a state, the sovereign powers of which are exercised to promote such public purpose or public business.

Green v. Frazier, 44 N.D. 395, 176 N.W. 11.

Irrigation districts established under the laws of the State are generally upheld as constitutional.

Statutes providing for the organization and government of such districts and regulating the mode of assessments upon the lands therein are enacted pursuant to the power of the state to act for the public welfare, in other words, the police power, and usually are sustained as constitutional by both state and federal courts. Such acts have in many instances been upheld as against the contentions that they improperly delegate legislative or judicial power, violate the right to due process of law, or permit the taking of property for private use. The established rules upholding the balance of a statute despite partial invalidity are applied to laws relating to the creation of irrigation districts.

30 Am.Jur., Irrigation, § 60.

The establishment of housing authority to cooperate with municipal authorities in slum clearance and with the aid afforded by the Federal Act to build sanitary, low-rent dwellings, has been upheld as constitutional. Ferch v. Housing Authority of Cass County, supra.

The powers and duties conferred upon the district board of directors by § 61–24–08, necessary for our consideration, are as follows:

2. To exercise the power of eminent domain in the manner provided by title 32, Judicial Remedies for the purpose of acquiring and securing any right, title, interest, estate or easement necessary to carry out the duties imposed by this chapter, and particularly to acquire the necessary rights in land for the construction of dams, reservoirs, canals, hydroplants, irrigation systems and any other device for the conservation, storage and use of water, and to secure the right of access to such works and the right of the public access to the waters impounding thereby or emanating therefrom;

3. To accept funds, property and services or other assistance, financial or otherwise, from federal, state, and other public or private sources for the purpose of aiding and promoting the construction, maintenance and operation of the Garrison Diversion Unit, or any part thereof;

\* \* \* \* \* \*

5. To furnish assurances of co-operation and as principal and guarantor or either to enter into a contract, or contracts, with the United States of America, or any department or agency thereof, and with public corporations of North Dakota for the performance of obligations entered into with the United States for the construction, operation or maintenance

of works of the Garrison Diversion Unit of the Missouri River Basin Project as defined by Act of Congress, approved December 22, 1944 (58 Stat. 887), and acts amendatory thereof or supplementary thereto;

\* \* \* \* \* \*

[As amended by 1963 Session Laws, Chapter 422, § 2.]

9. In 1961 and each year thereafter to levy a tax of not to exceed one mill annually on each dollar of taxable valuation in the district for the payment of the expenses of the district, including, but not limited to, per diem, mileage and other expenses of directors, technical, administrative, clerical, operating and other expenses of the district office, and for the cumulation of a continuing fund through such levy for the performance of obligations entered into with the United States of America in connection with the construction, operation and maintenance of works of the said Garrison Diversion Unit of the Missouri River Basin Project. All moneys collected pursuant to such levy shall be deposited in the Bank of North Dakota to the credit of the district and shall be disbursed only as herein provided. The board may invest any funds on hand, not needed for immediate disbursement or which are held in reserve for future payments, in bonds of the United States, bonds and mortgages or other securities the payment of which is guaranteed by the United States or an instrumentality or agency thereof, bonds or certificates of indebtedness of the state of North Dakota or any of its political subdivisions. The amount which may be levied in any one year for operating the district prior to authorization by Congress of the Garrison Diversion Project shall not exceed ten percent of the maximum permissible;

10. To enter into a contract or contracts for a supply of water from the United States and to sell, lease and otherwise contract to furnish any such water for beneficial use to irrigation districts, persons or other public and private corporations within the district;

11. To operate and maintain or to contract for the operation and maintenance of water supply and irrigation works serving lands and uses within the district, and in connection therewith, to maintain a reserve fund to meet major unforeseen costs of operation and maintenance \* \* \*.

■ The first question raises the inquiry whether Chapter 61–24 of the North Dakota Century Code, particularly as to § 61–24–08, vesting certain powers and duties upon the Garrison Diversion Conservancy District and the manner in which such powers are being exercised, is valid under the provision of § 25 of the North Dakota Constitution as being an unlawful delegation of legislative power; and under the provision of § 13 of the North Dakota Constitution as being in violation of the due process of law clause of the North Dakota Constitution.

We will first consider the first part of question No. 1 whether Chapter 61–24 of the North Dakota Century Code is an unlawful delegation of legislative powers under § 25 of the North Dakota Constitution, which vests legislative power in the Legislature, and in the people by the initiative and the referendum.

In 16 C.J.S. Constitutional Law § 138b, relating to the delegation of legislative powers, it is said:

The legislature may delegate to executive officers or bodies the power to carry out the details of statutes relating to water storage, irrigation, hydro-electric, flood control or drainage projects or districts, water pollution, or navigability of waters.

The legislature may delegate to executive officers or agencies the power to administer statutes relating to the creation and operation of water storage, hydroelectric, irrigation, flood control or drainage projects or districts. In performing such function, they may be empowered to exercise a broad discretion, including the determination of facts on which the operation of a statute depends; but they cannot be empowered to exercise strictly legislative powers or arbitrary uncontrolled discretion. Applying these principles, statutes are, or particular statutes have been, held valid which authorize an administrative officer or body to plan and carry out a comprehensive program of water projects, to determine whether particular water projects will fulfill the purposes of the statute, * * *.

■ The Legislature may delegate to local governmental agencies the power to legislate as to local affairs in the absence of a prohibition in the Constitution. In 16 C.J.S. Constitutional Law § 140, the delegation to legislate as to local affairs is discussed:

In the absence of a prohibition in the constitution the legislature may delegate to local governmental agencies the power to legislate as to local affairs. Statutes delegating such power are strictly construed.

The general doctrine prohibiting the delegation of legislative powers has no application to the vesting of such powers in political subdivisions created for the purpose of local government. In the absence of constitutional inhibitions, the legislature may delegate to appropriate local governmental agencies authority to legislate with respect to local affairs, to frame and enforce such by-laws, ordinances, and regulations, as are incident to local self-government, and to carry out certain functions which, although limited in their scope, are, in their performance, an exercise of sovereignty. It may impose on such organizations the authority as agents of the state to carry out and perform a state function or purpose. While legislative power cannot be delegated to local boards or officers, other than legislative bodies, the legislature may delegate to such boards or officers administrative functions in carrying out the purpose of the statute, and various governmental powers for the more efficient administration of laws, provided primary standards are established for their guidance, and where duties to be performed by local boards are solely ministerial there is no illegal delegation of legislative power, notwithstanding the exercise of such duties may require consideration of changing conditions. Statutes delegating legislative powers to local authorities are subject to the general presumption in favor of their validity, * * * but are to be strictly construed against any greater delegation of legislative power than clearly appears from the language used.

■ Article V, § 130 of the North Dakota Constitution provides for the organization of municipal corporations and fixes their powers. There is nothing in this Section of the Constitution restricting the Legislature in the exercise of that duty. It may limit such powers or withdraw any power vested in a municipality and place it with another public agency if it so desires. Ferch v. Housing Authority of Cass County, supra.

■ A further review and discussion of the unlawful delegation of legislative power is contained in 16 Am.Jur.2d, Constitutional Law, § 250, page 500:

It is a well-settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of powers to govern matters which are local in scope. For a great variety of purposes and governmental functions the legislature may delegate a part of its power over local subjects to

municipal corporations, county boards, and other public bodies within the legislative classification of departments. In addition to the most frequent exercise of this power, in the case of municipalities, this principle has been employed to sustain a delegation of powers ordinarily exercisable only by the legislature to such subdivisions as township committees, park commissioners, school districts, and counties or county boards.

We will now consider that part of question No. 1 whether Chapter 61–24, North Dakota Century Code, violates the due process provision of the North Dakota Constitution, § 13, relating particularly to the powers and duties conferred upon the Garrison Diversion Conservancy District and its directors by § 61–24–08 and the manner in which such powers are being exercised by such District in the Master Contract.

The Constitution of North Dakota, in § 13, provides that "no person shall be * * * deprived of life, liberty or property without due process of law."

While it is true that no precise definition of the phrase, "due process of law," can be given, yet the courts have frequently defined the phrase in general terms. It has been said that due process of law must be understood to mean law in the regular course of administration through courts of justice according to those rules and forms which have been established for the protection of private rights. * * * A general law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process of law.

12 Am.Jur., Constitutional Law, § 571.

The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause.

12 Am.Jur., Constitutional Law, § 573.

A review of the record indicates that the due process requirement has been met in all respects. The Garrison Diversion Conservancy District has been organized in compliance with the provisions of Chapter 61–24. The formation of the Master Contract and the Four Three-way Contracts has been accomplished in strict compliance with the statutes.

We are of the opinion that the provisions of Chapter 61–24, North Dakota Century Code, and particularly § 61–24–08, which vests certain powers and duties in the Garrison Diversion Conservancy District, and the manner in which such powers are being exercised by said Garrison Diversion Conservancy District in the Master Contract, are not in violation of § 25 of the North Dakota Constitution as being an unlawful delegation of legislative power, nor in violation of § 13 of the North Dakota Constitution as depriving a person of life, liberty or property without due process of law.

The answer to question No. 1 is, yes.

Question No. 2 inquires whether the levy of a one mill tax promulgated by paragraph 4 on page 2 of the Resolution adopted by the Garrison Diversion Conservancy District, in compliance with § 61–24–14, and as authorized by § 61–24–08(9), is valid under the provisions of § 176 of the North Dakota Constitution, where all lands located within the Conservancy District will be subject to the tax whether or not such lands are within an established irrigation district of the Conservancy District.

The levy of this tax is authorized by §§ 61–24–14 and 61–24–08, subsection 9. However, it is not necessary for us to pass on the validity of the levy of this tax as the Master Contract does not require that this tax be levied. The answer to this question would not be determinative of the issue but would be merely advisory. Therefore, we decline to answer this question.

Chapter 32–24, N.D.C.C., providing for the certification of questions of law to the Supreme Court does not contemplate the making of mere advisory opinions to the trial court.

City of Grand Forks v. Grand Forks County, (N.D.1965), 139 N.W.2d 242.

Question No. 3 relates to the exercise of the power of eminent domain vested in the Garrison Diversion Conservancy District by § 61–24–08 for the purpose of taking or the exercise of eminent domain to provide waterways and canals and for other purposes conferred upon the Garrison Diversion Conservancy District by statute, and as provided for in the Master Contract.

█ We have heretofore held the Garrison Diversion Conservancy District is a governmental agency, body politic and corporate with the authority to exercise the powers specified in this Chapter as provided by § 61–24–02, that it is for a public purpose, and as such it has the same power to exercise eminent domain as the State itself, or any department thereof. In Kuecks v. Cowell, (N.D.1959), 97 N.W.2d 849; in Northwestern Bell Telephone Co. v. Wentz, (N.D.1960), 103 N.W.2d 245; and in Chandler v. Hjelle, (N.D.1964), 126 N.W.2d 141, the State Highway Department's right to exercise eminent domain was upheld.

The answer to question No. 3 is, yes.

█ Question No. 4 relates to the authority of the Garrison Diversion Conservancy District to carry out the provisions of the Master Contract under the provisions of Chapter 61–24 of the North Dakota Century Code.

Having heretofore held that the Master Contract is valid it naturally follows that the Garrison Diversion Conservancy District, which is a party to the Contract, has the power to carry it out. Therefore, the answer to question No. 4 is, yes.

Questions numbered 1, 3 and 4 are answered in the affirmative. Question numbered 2 we decline to answer.

The case is remanded for further proceedings conformable to law.

TEIGEN, C. J., and ERICKSTAD, STRUTZ and MURRAY, JJ., concur.

On Petition for Rehearing

KNUDSON, Judge.

The petitioners request a rehearing or a reconsideration of certified question No. 2 which we declined to answer in the opinion for the reason stated therein that the Master Contract did not require the levy of the tax levied by the resolution, and that any answer to this question would not be determinative of the issue but would be merely advisory.

However, the petitioners inform us that the term "assessment," as used in paragraph 24 of the Master Contract is meant to include "general property taxes," as well as assessments for local improvements.

Paragraph 24, on page 16 of the Master Contract, reads as follows:

C-District shall cause to be levied and collected all necessary assessments, tolls, and other charges, and will use all of the authority and resources of C-District to meet the obligations of C-District to make in full all payments to be made pursuant to this contract on or before the date such payments become due and to meet its other obligations under this contract.

The term "assessment" in this instance is used in a broad sense. It includes general property taxes and is not limited to assessments normally made in special improvement districts, even though some are included herein.

As the term "general property taxes" comes within the meaning of the term "assessment" as used in the above paragraph it

was intended by this language to require the Garrison Diversion Conservancy District to use its full authority and resources to levy the general property tax of not more than one mill in compliance with § 61–24–14, and as authorized by § 61–24–08(9).

The term "assessment" coupled with the language, "and will use all of the authority and sources of C-District * * *," leaves no doubt that one of the conditions of the contract is that the Garrison Diversion Conservancy District will assert all of its taxing power to meet the obligations of the contract.

It is called to our attention that question No. 2 contains several phases, portions or questions which may be stated separately as follows:

Part 1. Is subsection 9 of § 61–24–08 a valid delegation of legislative power?

Part 2. Was the procedure adopting the Resolution levying a property tax valid?

Part 3. Was the tax levied by the Resolution on each piece of property valid even though the property may not be located within an irrigation district of the Garrison Diversion Conservancy District?

We have already indicated that subsection 9 of § 61–24–08 is valid, as we held § 61–24–08 to be a valid delegation of legislative power in our affirmative answer to question No. 1 in the main opinion. However, a further discussion concerning the delegation by the legislature of the power of taxation to minor political subdivisions of the state would be appropriate.

■ The right of taxation, inherent in the people, has been vested in the legislature by the Constitution. As a general rule this sovereign power of taxation is incapable of being delegated by the legislature. It is, however, a well-recognized exception of the rule in the case of minor political subdivisions of the state, which are usually vested with the power of providing revenue to defray the expenses of the local governments and to pay for local improvements made for the public use and benefit. In North Dakota this power to tax has been delegated to counties, cities, villages and townships. This court has passed upon this question in Vallelly v. Board of Park Commissioners, 16 N.D. 25, 111 N.W. 615, 15 L. R.A.,N.S., 61, wherein we said:

It is conceded, and could not reasonably be doubted, that the power to levy taxes is a legislative power. The legislative power is by the Constitution vested in the Senate and House of Representatives. [And in the people through the initiative and the referendum.] * * * It is a general principle that legislative powers cannot be delegated. A general exception exists to the effect that legislative powers may be delegated in reference to matters of local government or concern. The power of levying taxes by municipal corporations or other governmental agencies may be delegated; and section 130 of the Constitution plainly recognizes the power of the Legislature to delegate such power to municipal corporations. * * *

It has become a well-recognized principle of constitutional law that local boards and councils elected by the people are bodies to which the power to tax may be delegated. This is so upon the principle that the legislative power to levy taxes rests with the people; and, so long as the people have a voice in the selection of bodies to which the power to tax is delegated, the constitutional restriction is not violated.

The directors of the Garrison Diversion Conservancy District are elected by the people of the several counties within the District, thus constituting a board of a body politic elected by the people to whom may be delegated the authority to levy taxes, within the limits prescribed by the legislature.

■ The answer to part 1 of question No. 2 is, yes; we hold that the power and

authority conferred on the directors of the Garrison Diversion Conservancy District by subsection 9 of § 61–24–08 to levy a tax of not to exceed one mill annually on each dollar of taxable valuation in the district is a valid delegation of legislative power and not in violation of § 25 of the North Dakota Constitution.

The proceedings for the adoption of the resolution by the directors of the Garrison Diversion Conservancy District levying a general property tax of one mill annually on each dollar of taxable valuation in the district in conformance with the requirement of § 61–24–14, and as authorized by subsection 9 of § 61–24–08, have been examined and we find were held in strict compliance with the statutes providing the procedure to be followed and were in accordance with due process.

The answer to part 2 of question No. 2 is, yes.

We come now to part 3 of question No. 2 posing the question whether the tax on each piece of property is valid even though the property is not located within an irrigation district of the Conservancy District.

The answer to this question involves special rights reserved to aggrieved parties under § 176 of the North Dakota Constitution requiring that taxes shall be uniform upon the same class of property within the territorial limits of the taxing district.

This is not at issue in the proceeding and any answer we may give to the question would be merely advisory and would not be determinative of the issue.

Therefore, we decline to answer part 3 of question No. 2.

To summarize our answer to question No. 2 we say: The levy of the general property tax was pursuant to §§ 61–24–14 and 61–24–08(9) which we have held to be a constitutional delegation of power, the exercise of which was in accordance with due process. However, whether in specific instances the enforcement of the levy would be violative of certain rights reserved to aggrieved parties under § 176 of the North Dakota Constitution is not at issue in this proceeding and any opinion at this time would therefore be merely advisory.

The petition for rehearing is denied.

TEIGEN, C. J., and MURRAY and STRUTZ, JJ., concur.

ERICKSTAD, J., being absent from the State did not participate.