82  242
115  257
82  242
d124 503
124  504
82  242
134  412

# Schultes *v.* Eberly.

*Action to recover Money paid under protest as School Tax.*

1. *Cullman School District; constitutionality of statute granting taxing powers to trustees.*—The Cullman School District, created by the act approved February 14th, 1884 (Sess. Acts 1884-5, p. 461), though a public corporation for some purposes, is not a municipal corporation; and the provision contained in the 11th section, giving the trustees power to levy a tax for school purposes, is violative of constitutional principles.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. JAMES AIKEN.

This action was brought by Charles Schultes, against H. W. Eberly, tax-collector of said county, to recover the sum of $3.84, which the plaintiff had paid, under protest and legal compulsion, as the tax assessed against his property by the trustees of the Cullman School District; and was commenced, before a justice of the peace, on the 20th January, 1886. The justice rendered judgment for the plaintiff, but, on appeal to the Circuit Court, that court sustained the constitutionality of the tax, and rendered judgment against the plaintiff; to which ruling and judgment he duly excepted, and here assigns the same as error.

W. T. L. COFER, for appellant.

GEO. H. PARKER, and WATTS & SON, *contra.*

CLOPTON, J.—By authority of the eleventh section of "An act to establish a separate school district, to be known as the Cullman School District, in Cullman county, Alabama, and for the appointment of trustees for said school district, with certain powers and privileges," the trustees levied a tax, which the appellant paid under compulsion, protest, and with notice of suit; and he now sues to recover the amount.—Acts 1884-85, p. 461. The question is, whether, under the State constitution, it is competent for the legislature to delegate to the trustees the power to tax. We have thus limited the question, as we do not wish what may be said to be understood as applicable to school districts created within the corporate limits of a municipal corporation, where the power to tax resides in the muni-

VOL. LXXXII.

cipal authorities, and is not in excess of the constitutional limitation. Though the amount in controversy is insignificant, great importance attaches to the question, as it touches and materially affects the legislative attempts, which have come into practice during the last few years, to extend and impart more efficiency to the system of public education, by the establishment of separate school districts, with powers in the trustees to supplement their share of the general school fund by the levy and collection of a special and additional tax. Its consideration should be approached under a due sense, on the one hand, of the incalculable advantages and benefits of a pervading and efficient system of public education; and, on the other, of the individual rights and public interests dependent on maintaining intact the organic law, the declared will of the sovereign people.

The legislative power, conferred on the General Assembly, is plenary, except as restrained by the Federal and State constitutions, and by the rule, that it must be legislative in character and purpose. Whoever asserts the unconstitutionality of a statute, assumes the burden to show some constitutional prohibition violated, or some limitation exceeded. The prohibition or limitation need not be express; it is sufficient if such is the manifest implication from the tenor and spirit of all the provisions relating to the subject-matter. The taxing power is legislative, and, being an incident of sovereignty, is only limited as to the subjects and rates of taxation, in the absence of constitutional limitation, by public purposes and the needs of the government. But we have not to deal with the *power* to tax, as conferred on the General Assembly. The right to *exercise* legislative power, and to *delegate* it to subordinate agencies and auxiliaries, are essentially different questions. The rule of constitutional law is, that when the constitution creates a department, on which sovereign power is conferred, the grant is exclusive, except as its delegation may be authorized by the granting instrument. The power to tax, so unlimited in capacity, so far-reaching in effect, and so liable to abuse, peculiarly falls within the operation of this rule.—Cooley on Tax. 61. Whoever, in such case, asserts competency to delegate, assumes the *onus* to show constitutional authority, express or clearly implied.

Article 13 of the constitution (1875) commands: "The General Assembly shall establish, organize and maintain a system of public schools throughout the State, for the equal benefit of the children thereof." The duty being enjoined, it is insisted that the incidental and necessary powers to

[Schultes v. Eberly.]

its performance should be implied, including not only the power to establish separate school districts, but also to confer on the trustees of such school districts the power to tax for educational purposes. The article designates special funds and a special tax, which, with such moneys as the General Assembly shall provide by taxation or otherwise, constitute the public school fund, which it is made the duty of the General Assembly to increase, from time to time, as the condition of the treasury and the resources of the State will admit. Section 4 declares, that the General Assembly shall provide for the levying and collection of an annual poll-tax, which shall be applied to the support of the public schools in the counties in which it is levied and collected. Other than a poll-tax, the article does not import that taxes shall be imposed specially for educational purposes. It seems to contemplate, that the moneys, which the General Assembly shall provide by taxation, are to be raised under the general taxing power, in the same manner as the general revenue is raised, and to be appropriated in such amounts as the condition of the treasury and the resources of the State may justify, but not to be less than one hundred thousand dollars per annum. The public school system, which the constitution enjoins shall be established, organized and maintained, extends throughout the State, and is for the equal benefit of the children thereof, operating upon and in favor of all alike, without special local rights, privileges, or burdens. In addition to the special funds enumerated, and a poll-tax, the power of taxation, as conferred on the General Assembly, and limited by the constitution, was deemed a proper and sufficient mode of discharging this legislative duty. While there can be no question of the power of the legislature to establish separate school districts, and to create them bodies corporate, as auxiliaries in the administration of the general system, the constitution makes no provision for such districts, and no implied powers arise.

The "Cullman School District" is not created a corporation in terms; but we shall regard it, by implication, as a public corporation, being for public purposes, as otherwise it would be a palpable violation of the constitutional prohibition, "No power to levy taxes shall be delegated to individuals or private corporations." There being no *express* authority conferred, the power to delegate must be implied; but the implication only extends to such public corporations as are established exceptions to the general rule of incompetency to delegate. Says Justice Cooley: "There is, nevertheless, one clearly defined exception to the rule,

that the legislature shall not delegate any portion of its
authority.  The exception, however, is strictly in harmony
with the general features of our political system, and it rests
upon an implication of popular assent, which is conclusive.
The exception relates to the case of municipal corporations."
Such corporations, being considered parts of the machinery
of the government, governmental agencies necessary and
most effective to manage the local affairs of the people re-
siding in the designated locality, by custom immemorial, a
portion of the political powers of the State has been dele-
gated to them, to be exercised in local administration; and
the authority to delegate, if not expressly incorporated in
the constitution, may be regarded as clearly implied.
Cooley on Tax., 63.  On this principle the framers of the
constitution acted.  The convention, without conferring ex-
press authority to delegate to municipal and like corpora-
tions, and yet recognizing and admitting its manifest impli-
cation, deemed it sufficient to declare limitations upon the
extent of the delegation.  Hence, after creating limitations
upon the power of the General Assembly as to equality and
rate of taxation on property, limitations upon the power of
counties, cities, towns, and other municipal corporations,
were also created in the same article of the constitution.

The character of the legislation antecedent to the present
constitution was calculated to especially direct the consid-
eration of its framers to the necessity of protection against
excessive and oppressive taxation of property.  The result
is, every provision in respect to the subject is a limitation
or restraint upon the power conferred by the general grant
of legislative power.  In fact, the entire constitution may
be regarded as restraining in its character and operation in
respect to taxation.  It was, no doubt, intended to limit the
taxing power of the General Assembly, and of all the subor-
dinate agencies of the government, to whom there was au-
thority to delegate the power.  The conclusion, that munici-
pal corporations, including counties, which may be classed
as *involuntary quasi municipal,* are the only public corpora-
tions which the constitution recognizes as an exception to
the general rule, that the legislature shall not delegate the
power to tax, is strengthened by the proviso to the 24th
section of the Declaration of Rights, which furnishes rules
for the construction of subsequent provisions when doubt-
ful.  After modifying the declared right of eminent domain,
it is provided, that it "shall not be so construed as to allow
taxation or forced subscriptions for the benefit of railroads,
or *any other kind of corporations other than municipal,* or for
the benefit of any individual or association."  While it may

[Schultes v. Eberly.]

be admitted there is confusion of ideas —confounding the power of taxation and the right of eminent domain—the proviso is significant to show an intention that taxation shall not be allowed, under any pretense, to corporations other than municipal.— *Waterhouse v. Board of C. & D. of Cleveland Schools*, 8 Heisk. 857.

It is useless to waste discussion to show that the "Cullman School District" is not a municipal corporation. Speaking of such districts as corporate bodies, Judge Dillon says : "Considered with respect to the limited number of their corporate powers, the bodies above named rank low down in the scale or grade of corporate existence ; and hence have been frequently termed *quasi* corporations. This designation distinguishes them, on the one hand, from corporations aggregate, and on the other, from municipal corporations proper, such as cities or towns acting under charters, or incorporating statutes, and which are invested with more functions and a larger amount of corporate life." 1 Dil. Mu. Corp., § 25 ; *Heller v. Stenmel*, 52 Mo. 309.

The people have no voice in the selection of the trustees, nor in the management and control of the public schools, the building of school-houses, or any of the local affairs of the district. The first trustees are appointed, *eo nomine*, in the act, and their successors by the State superintendent of education. They are clothed with all the executive powers pertaining to the purposes of the corporation, and are vested with the highest attribute of legislative power, to levy and collect a tax. Exclusive of the trustees, the corporation has no functions ; it does not possess what has been said to be the distinguishing feature of a municipal corporation proper, the power of local government in a corporate capacity ; and the cardinal principle of self-taxation is ignored. It has no features in harmony with our system of republican government. However earnest may be the interest in popular education, and however great may be the desire to contribute to its spread and advancement, we can not afford, in order to accomplish an end so benevolent and beneficial, to break down the constitutional safe-guards of property, which the sovereign people have ordained for their protection. If the authority of the legislature to delegate the power to tax to the trustees of this district is upheld, the constitutional limitations upon the power of the General Assembly, counties and municipal corporations, are vain and delusive. Similar corporations, to an indefinite number, may be created, covering the entire territorial area and population of the State—*subordinate* agencies despotic *sub modo*, being governed by trustees of legislative appoint-

[Gordon v. McIlwain.]

ment with power to impose a tax on the people, to whom they are under no official accountability, who have clothed them with no authority, and who are appointed without the consent of those who are to pay the tax, directly or indirectly expressed. If this can be done for educational purposes, it may be done for any other public purpose. Such legislation, first induced by a patriotic desire to secure the great *desideratum* of popular education, calculated to lull viligance, may become misgovernment, subversive of the fundamental and distinguishing principles of republican institutions. Considering all the provisions of the constitution, and all the public rights and interests involved, we are forced to hold that the General Assembly had no authority to delegate the power to tax to the trustees of the "Cullman School District."

Reversed and remanded.