749 So.2d 425 (1999)
John DOBBS and Audrey Dobbs
v.
The SHELBY COUNTY ECONOMIC AND INDUSTRIAL DEVELOPMENT AUTHORITY et al.
Dawn Marie Pate and Royce D. Williams
v.
The Industrial Development Board of the City of Trussville et al.
1970932 and 1971026.
Supreme Court of Alabama.
November 5, 1999.
*426 Albert L. Jordan and Michael L. Jackson of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham; and Algert S. Agricola, Jr., of Wallace, Jordan, Ratliff & Brandt, L.L.C., Montgomery, for appellants John Dobbs and Audrey Dobbs.
J. Michael Rediker, Patricia Diak, and Michael C. Skotnicki of Ritchie & Rediker, L.L.C., Birmingham, for appellants Dawn Marie Pate and Royce D. Williams.
Frank C. Ellis, Jr., of Wallace, Ellis, Fowler & Head, Columbiana, for appellees Shelby County Economic and Industrial Development Authority and its individual directors, Hayden Montgomery, Julia Stewart, Frank Dorrance, Jr., William W. Cooper, Johnny L. Lowe, Stephen R. Chapman, Andrew D. Bussey, Robert A. Doyle, Eric Ellington, David Nolen, and Gail Owen; Shelby County; and the Shelby County Commission.
Martin G. Woosley of Martin, Drummond & Woosley, P.C., Birmingham, for appellee Industrial Development Board of the City of Trussville.
Hugh R. Evans III, Montgomery, for appellees Alabama Ethics Commission and its individual members, Lewis G. Odom, Jr., John H. Watson, Henry B. Gray III, Camille S. Butrus, and Helen Shores Lee.
*427 Bill Pryor, atty. gen.; Ron Bowden, chief counsel, Department of Revenue, and asst. atty. gen.; and David E. Avery III, asst. counsel, Department of Revenue, and asst. atty. gen., for appellee H.E. "Gene" Monroe, Commissioner, Department of Revenue.
Alex B. Leath III of Balch & Bingham, L.L.P., Birmingham, for amicus curiae Economic Development Association of Alabama, Inc., in support of the appellees.
Corrie P. Haanschoten, general counsel, for amicus curiae Alabama Education Association.
JOHNSTONE, Justice.
In the Shelby County Circuit Court, John Dobbs and Audrey Dobbs filed a complaint for a declaratory judgment. They named as defendants the Commissioner of the Department of Revenue, Shelby County, the Shelby County Commission, the Shelby County Economic and Industrial Development Authority (SCEDA), the directors of SCEIDA, the Alabama Ethics Commission, and the members of the Ethics Commission.[1] The Dobbses sought a declaration that the Tax Incentive Reform Act of 1992 (TIRA), codified at §§ 40-9B-1 through -8, Ala.Code 1975, improperly delegates to SCEIDA the authority to grant tax abatements and thereby violates Art. I, § 23; Art. IV, §§ 93, 104, and 108; and Art. XI, § 212, Alabama Constitution of 1901. They also sought a declaration that the SCEIDA directors are public officials required by the 1995 Ethics Act, § 36-25-1 et seq., Ala. Code 1975, to file statements of economic interests pursuant to § 36-25-14.
All parties moved for a summary judgment. After a hearing, the trial court held that TIRA is constitutional and that the SCEIDA directors are not required to file statements of economic interests. The trial court denied the plaintiffs Dobbses' summary judgment motion but granted the summary judgment motions of the defendants the Revenue Commissioner, Shelby County, the Shelby County Commission, SCEIDA, the SCEIDA directors, the Alabama Ethics Commission, and the members of the Ethics Commission. The Dobbses appeal.
Similarly, in the Jefferson County Circuit Court, Dawn Marie Pate and Royce D. Williams, as individuals and on behalf of the taxpayers of Alabama, filed a complaint for a declaratory judgment and named as defendants the Commissioner of the Department of Revenue, the Industrial Development Board of the City of Bessemer (IDBB), and the Industrial Development Board of the City of Trussville (IDBT). Pate and Williams sought a declaration that those portions of TIRA that delegate to public industrial authorities (PIAs) the power to abate specified city, county, and state taxes are unconstitutional under the same sections invoked by the Dobbses  §§ 23, 93, 104, 108, and 212. All parties moved for summary judgment. After a hearing, the trial court held that TIRA does not violate any of these sections of the Alabama Constitution of 1901. The trial court denied the plaintiffs Pate and Williams's summary judgment motion but granted the summary judgment motions of the defendants the Revenue Commissioner, IDBB, and IDBT. Pate and Williams appeal.
Upon motions of the parties, this Court consolidated the appeal of the Dobbses with the appeal of Pate and Williams. On appeal, the Dobbses and Pate and Williams all contend that the legislative grant, through TIRA to PIAs, of the power to abate certain taxes violates Art. I, § 23; Art. IV, §§ 93, 104, and 108; and Art. XI, § 212, Alabama Constitution of 1901. The Dobbses also insist on their contention that the directors of PIAs are public officials who are required to file statements of economic interests.
*428 Rule 56, Ala. R. Civ. P., establishes a two-tiered standard for the entry of a summary judgment. To grant summary judgment, the trial court must ascertain that (1) there is no genuine issue of material fact and (2) the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3); Ex parte Brislin, 719 So.2d 185 (Ala.1998). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Id.
We will address first the constitutionality of the delegation by TIRA of tax-abatement powers to PIAs. In reviewing the constitutionality of a legislative act, this Court will sustain the act "`unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'" White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala.1989) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). All presumptions are indulged in favor of the validity of the act. House v. Cullman County, 593 So.2d 69 (Ala.1992).
TIRA is intended to promote industrial growth in Alabama by permitting municipalities, counties, and PIAs to abate municipal, county, and state noneducational ad valorem taxes, construction-related "transaction" taxes, mortgage taxes, and recording taxes for a "maximum exemption period" of 10 years when such taxes would otherwise be levied or collected "with respect to private use industrial property." §§ 40-9B-4 and -5, Ala.Code 1975. TIRA requires the abatements to "be embodied in an agreement" which must set forth the estimated amount of the abatement, "the maximum exemption period," and the "[g]ood-faith projections by the private user of: the amount to be invested[,] the number of individuals to be employed, initially and in the succeeding three years[,] and the payroll." § 40-96(b)(1) and (2).
TIRA requires that a PIA be a "public authority" authorized to issue tax-exempt industrial development bonds. TIRA thereby incorporates Chapter 92A of Title 11 (§§ 11-92A-1 through -22), Ala.Code 1975, which provides for those entities, called "industrial development authorities" (IDAs). Pre-existing industrial development boards (IDBs) incorporated under § 11-20-1 et seq. and § 11-54-1 et seq., Ala.Code 1975, may be reincorporated under this Chapter. §§ 11-92A-6 and -7. Thus a PIA is an IDA (or an IDB) which seeks to exercise tax-abatement powers under TIRA.
As the foregoing description reveals, TIRA depends and impinges on earlier industrial development statutes. A brief history of this legislation discloses the ramifications of the constitutional issues before us.
In 1949, the Alabama Legislature adopted the Cater Act, § 11-54-80 et seq., Ala.Code 1975, to promote and to develop industry in Alabama. The Cater Act authorizes municipalities to incorporate industrial development boards (IDBs). §§ 11-54-81 through -85, Ala.Code 1975. The Act authorizes IDBs to acquire projects composed of real and personal property and to lease, to sell, to exchange, to donate, or to convey its projects or properties. §§ 11-54-87(a)(4), (a)(5), and (a)(6). The Cater Act authorizes IDBs to issue bonds for the purpose of carrying out any of their powers, § 11-54-87(a)(7), and to mortgage any or all of their property as security for the payment of the principal of and interest on any bonds issued to purchase or to improve the property, § 11-54-87(a)(8). An IDB must amortize all bonds from the revenues and proceeds derived from the lease or sale of the property, and must redeem the bonds within 40 years of their execution and delivery. The Cater Act exempts all property owned by IDBs, income from the property, and all bonds issued by IDBs from "all taxation in the State of Alabama." § 11-54-96.
In 1951, the legislature passed the Wallace Act, § 11-54-20 et seq., Ala.Code 1975. The Wallace Act authorizes the municipalities themselves to perform the *429 same acts and services as the IDBs. Mc-Donald's Corp. v. DeVenney, 415 So.2d 1075 (Ala.1982). However, the Wallace Act requires that the principal of and interest on bonds issued by a municipality must be paid from the revenues derived from leasing the property. § 11-54-24. The issuing municipality must redeem the bonds within 30 years of their execution and delivery. § 11-54-24. Such bonds, the income therefrom, all mortgages executed as security for the bonds, all leases of projects financed by the bonds, the revenues from the leases, and the projects themselves are exempt from "all taxation in the State of Alabama." § 11-54-31.
In order to give counties the same economic opportunities as municipalities, the legislature adopted the 1961 County Board Act, §§ 11-20-1 through -13, Ala.Code 1975. The 1961 County Board Act authorizes counties to acquire and to improve land (projects), to lease the projects, and to issue "revenue bonds" to defray the costs of acquiring and constructing the projects. § 11-20-3. However, before a county may issue any bonds, the county must lease the property. The lease agreement must require sufficient lease payments to pay the principal of and interest on the bonds, to build and to maintain any reserves deemed advisable by the county commission, and to pay the cost of maintaining the property and any buildings thereon. § 11-20-4. The bonds, the income from the bonds, all mortgages executed as security for the bonds, all lease agreements pursuant to this Act, the revenues from the leases, and all projects financed by the bonds are "exempt from all taxation in the State of Alabama." § 11-20-12. The bonds must be redeemed within 30 years of execution and delivery. § 11-20-5.
The legislature next adopted the 1977 County Board Act, which authorizes counties to incorporate industrial development boards. § 11-20-30 et seq., Ala.Code 1975. The 1977 County Board Act grants the IDBs incorporated by counties the same powers, rights, and duties as the IDBs incorporated by municipalities. §§ 11-20-37, 11-20-38, and 11-20-41. All bonds issued by an IDB incorporated by a county must be amortized from the revenues and proceeds from the lease or the sale of the developed property, and must be redeemed within 40 years of the execution and delivery of the bonds. § 11-20-38. Additionally, the 1977 County Board Act, like the earlier industrial development legislation for the other entities, grants comprehensive exemptions from "all taxation in the State of Alabama." § 11-20-47.
In 1989, the legislature adopted the County Industrial Development Authorities Act, § 11-92A-1 et seq., Ala.Code 1975, for the creation and empowerment of industrial development authorities (IDAs). Existing industrial development authorities and industrial development boards are authorized to reincorporate under §§ 11-92A-6 and -7 to cure irregularities or otherwise to obtain the benefits of the Act. The Act also authorizes the incorporation of new industrial development authorities. §§ 11-92A-3 through -6. The 1989 Act grants to IDAs the power to acquire real property for the purpose of establishing industrial parks, to improve such industrial parks, and to lease or to sell projects consisting of land, improvements, or both in the industrial parks to any persons. § 11-92A-12(18). The Act grants IDAs the power to issue bonds to accomplish the purposes authorized in § 11-92A-12, § 11-92A-13, and the power "[t]o require and/or accept lease payments or other compensation to or for the authority or other public persons in lieu of sales, use, mortgage, lease, ad valorem, and/or other taxes." § 11-92A-12(14). (Emphasis added.) Section 11-92A-12 further authorizes IDAs to spend these revenues and others on the needs of the entities themselves, §§ 11-92A-12(16), (17), (18), and (20), and to "make grants of money to other public persons and to [charitable organizations]," § 11-92A-12(10). Section 11-92A-18 provides comprehensive tax exemptions for, *430 among other things, all properties of an IDA, the income from the properties, all bonds and other securities issued by an IDA, the coupons thereon, the income from such bonds and securities, all instruments of security for the bonds and securities, all leases of IDA property or projects, all revenues from the leases, and all deeds or other documents executed by or delivered to an IDA.
The legislature adopted TIRA in 1992. Its provisions have already been summarized in this opinion.
The plaintiffs' claim that the legislative delegation (through TIRA) of tax-abatement power to PIAs violates Article XI, § 212, and Article 1, § 23, of the Constitution depends on two propositions. The first is that § 212 and § 23 forbid the delegation of the power to levy taxes to any public corporation except a municipal corporation. This first proposition is true, as we will detail. The second proposition, however, is problematic. It is that the power to abate taxes is tantamount to the power to levy them. Because the practical equivalence between abating taxes and levying them is indirect or consequential at best, we will decide whether the rationale of the opinions of this Court which hold that § 212 and § 23 prohibit the legislature from delegating the power to tax applies equally to the delegation of the power to abate.
"`The power of taxation is an incident of sovereignty and is possessed by the government without being expressly conferred by the people.'" Pullman Car & Mfg. Corp. of Alabama v. Hamilton, 229 Ala. 184, 186, 155 So. 616, 618 (1934) (quoting State v. Birmingham So. Ry. Co., 182 Ala. 475, 479, 62 So. 77, 79 (1913)). "`The power [of taxation] is purely legislative.'" Pullman Car & Mfg. Corp. of Alabama, 229 Ala. at 187, 155 So. at 618. Section 212 of the Alabama Constitution of 1901 provides, "The power to levy taxes shall not be delegated to individuals or private corporations or associations." This Court has held that § 212 and § 23, together, prohibit the legislature from authorizing public corporations, except municipal corporations, to levy taxes. Opinion of the Justices, No. 175, 275 Ala. 386, 155 So.2d 343 (1963); Schultes v. Eberly, 82 Ala. 242, 2 So. 345 (1886). See also Bradley v. State ex rel. Rockwell, 210 Ala. 166, 97 So. 543 (1923).
By definition and express legislative intent, a PIA is a public corporation. §§ 40-9B-3(15) and (16), 11-92A-1(2), and 11-92A-2(a), Ala.Code 1975. A public corporation is a separate entity from a county, city, or town, and is not a subdivision of the state. Smith v. Industrial Dev. Bd. of the City of Andalusia, 455 So.2d 839 (Ala. 1984). Moreover, a public corporation is not the alter ego or agent of the county or the municipality in which it is organized. Id. Accordingly, the legislature is prohibited from delegating the power to levy taxes to a PIA, such as SCEIDA, IDBB, or IDBT. Opinion of the Justices, No. 175, and Schultes, supra.
TIRA does not delegate to PIAs the power to levy taxes. TIRA delegates to PIAs the power to abate the specified municipal, county, and state taxes. §§ 40-9B-4 and -5. Therefore the crucial question in this appeal is whether the power to abate taxes falls within the constitutional prohibition against delegating to nonmunicipal public corporations the legislative power to levy taxes.
In Schultes, supra, the legislature delegated to the trustees of the Cullman School District the power to levy taxes. This Court, likening the power to levy taxes to the power of eminent domain, held that § 212 ("[t]he power to levy taxes shall not be delegated to individuals or private corporations or associations") and § 23 ("nor shall private property be taken for private use, or for the use of corporations, other than municipal"), considered together, prohibit the legislature from delegating to nonmunicipal public corporations the power to tax. In Opinion of the Justices, No. 175, supra, this Court applied the law *431 announced in Schultes to a bill to authorize the Mobile County Hospital Board, a public corporation, to "`levy ... an annual license tax and registration fee,'" 275 Ala. at 387, 155 So.2d at 344, and declared the bill unconstitutional. Bradley, supra, held that an act that authorized a "road district" to assess a tax for the construction, improvement, and maintenance of public roads violated § 23. All of these cases are distinguishable from the one before us in that allSchultes, Opinion of the Justices, No. 175, and Bradley, suprainvalidated taxation by nonmunicipal public corporations on the ground that the taxation constituted a taking of private property prohibited by §§ 212 and 23.
Sections 40-9B-4, -5, and -6 of TIRA authorize PIAs to grant tax abatements. Abating a prospective taxpayer's tax is not a taking of that taxpayer's private property, the vice condemned by Schultes, Opinion of the Justices, No. 175, and Bradley, supra. On the contrary, the abatement allows the taxpayer to keep his, her, or its private propertythe money that otherwise would have gone to pay the tax.
The tax-like features of an abatement are indirect or consequential. First, § 11-92A-12 grants to IDAs, and thereby to PIAs, the authority to require compensation for abatements and to spend the compensation with wide discretion. Second, a reduction in revenues resulting from abatements may cause taxing authorities to levy taxes or to increase those already levied on taxpayers not favored by abatements. These indirect or consequential tax-like features of abatements, however, are not within the ambit of the holdings of Schultes, Opinion of the Justices, No. 175, and Bradley, supra. On the contrary, the compensation a PIA may require for an abatement is a trade, not a taking "without the consent of the owner," as prohibited by § 23 of the Constitution. And the independent intervening judgment exercised by taxing authorities in shifting a tax burden from taxpayers with abatements to those without abatements interrupts any causal relation between the granting of the abatement and the shifting of the tax burden and forecloses a finding of proximate causation.
We decline to extend the holdings of Schultes, Opinion of the Justices, No. 175, and Bradley, supra, or the prohibitions of § 212 and § 23 themselves, to the delegation by TIRA to PIAs of the power to abate taxes. Such extension would eliminate not only the abatements by all PIAs under §§ 40-9B-4, -5, and -6 but also the abatements by all IDAs under § 11-9212(14). Eliminating these abatements and causing new and unexpected tax burdens on these taxpayers would likely jeopardize the amortization of bonds issued to finance these taxpayers' projects all over the state. Eliminating these abatements would also likely impede industrial development.
Next, we address the issues of whether the legislative delegation of the power to abate the specified taxes violates Art. IV, §§ 93, 104, and 108. Section 93 provides:
"The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation."
This Court has held that "the inhibitions [of] Section 93 have reference solely to the state as an entity distinct even from its political subdivisions such as counties or towns." Edmonson v. State Indus. Dev. Auth., 279 Ala. 206, 209, 184 So.2d 115, 118 (1966). This Court further has held that debts of public corporations are not debts of the state and that public corporations "cannot be deemed to be embraced within the term `the state' contained in ... Section 93." Opinion of the Justices, No. 120, 254 Ala. 506, 513, 49 So.2d 175 (1950). Therefore, TIRA does not violate Art. IV, § 93.
Section 104 provides, in pertinent part:

*432 "The legislature shall not pass a special, private, or local law in any of the following cases:
". . . .
"(9) Exempting any individual, private corporation, or association from the operation of any general law;
". . . .
"(15) Regulating either the assessment or collection of taxes, except in connection with the readjustment, renewal, or extension of existing municipal indebtedness created prior to the ratification of the Constitution of eighteen hundred and seventy-five;
". . . .
"(25) Exempting property from taxation or from levy or sale"
Section 108 provides:
"The operation of a general law shall not be suspended for the benefit of any individual, private corporation, or association; nor shall any individual, private corporation or association be exempted from the operation of any general law except as in this article otherwise provided."
Sections 104 and 108 "deny to the legislature power to enact special, private, or local laws. Such laws are defined in § 110 [Amendment 397] of the Constitution." Reese v. Rankin Fite Mem'l Hosp., 403 So.2d 158, 162 (Ala.1981). "A special or private law is one which applies to an individual, association or corporation. A local law is a law which is not a general law or a special or private law." § 110, Amendment 397, Alabama Constitution of 1901. "A general law is a law which in its terms and effect applies either to the whole state, or to one or more municipalities of the state less than the whole in a class." Id. "It operates throughout the state alike on all the people or all the people of a class." Reese, 403 So.2d at 162. As a general law within the constitutional definition, TIRA does not violate §§ 104 and 108.
The Dobbses further contend that SCEIDA is a "governmental corporation" and that therefore its directors are public officials who are required by § 36-25-14(a)(2), Ala.Code 1975 (Supp.1998), to file statements of economic interests. Section 36-25-14(a) requires a statement of economic interests to be filed by
"(2) Any person appointed as a public official and any person employed as a public employee at the state, county, or municipal level of government or their instrumentalities who occupies a position whose base pay is fifty thousand dollars ($50,000) or more annually."
The term "public official" includes "any person appointed to a position at the state, county, or municipal level of government or their instrumentalities, including governmental corporations." § 36-25-1(24). We will assume arguendo that the directors are public officials.
The Ethics Commission contends that the qualifying phrase"whose base pay is fifty thousand dollars ($50,000) or more annually"applies both to appointed public officials and to public employees, so that, because the SCEIDA directors do not receive salaries, the SCEIDA directors are not required to file statements of economic interests. The Dobbses respond that the qualifying phrase does not modify the term "public official." We disagree with the Dobbses' argument. "`Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all.'" White v. Knight, 424 So.2d 566, 568 (Ala.1982) (quoting 82 C.J.S. Statutes § 334 (1953)). Thus, we conclude that the qualifying phrase"whose base pay is fifty thousand dollars ($50,000) or more annually"applies equally to appointed public officials as to public employees. Therefore, because SCEIDA directors do not receive salaries, the SCEIDA directors are not required to file statements of economic interests.
*433 Upon the foregoing analysis, we affirm the judgments of the Shelby County Circuit Court and the Jefferson County Circuit Court. The abatements authorized by TIRA are constitutional, and the filing requirements of § 36-25-14 are not applicable to the SCEIDA directors.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
NOTES
[1] Various other state officers were named as defendants, but the claims against those officers were severed and are not involved in this appeal.